**Cherish PUDDICOMBE, n/k/a Cherish Poole, Appellant,**

v.

**Todd DREKA, Appellee.**

**No. S–12589.**

Supreme Court of Alaska.

Sept. 14, 2007.

---

Carl D. Cook, Houston & Houston, P.C., Anchorage, for Appellant.

No appearance by Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

This case involves a custody dispute between Cherish Poole [1] and Todd Dreka over

---

**1.** Cherish Poole was formerly known as Cherish Puddicombe. She changed her name when she remarried in July 2006.

their daughter Sydney Lynn Dreka. Poole appeals the superior court's award of custody to Dreka in the event Poole relocates to Arizona. Since the superior court found that both parties engaged in domestic violence but did not address the statutory requirements regarding domestic violence found in AS 25.24.150(c)(6) and AS 25.24.150(g)-(i), we remand for more specific findings.

## II. FACTS AND PROCEEDINGS

Sydney Lynn Dreka was born on March 31, 2003. Her parents, Todd Dreka and Cherish Poole, were never married. Poole has two other daughters from an earlier marriage who were eleven and fifteen at the time of the custody trial.

In December 2005 Poole moved for an ex parte custody award, interim custody, and a restraining order. The superior court denied her request to file the motions ex parte and ordered an interim custody hearing. At the May 2006 interim custody hearing the superior court granted shared 50/50 physical custody on an interim basis until the custody trial and ordered no contact between the parties except during exchanges. In July 2006 Poole married a resident of Arizona. At trial in August 2006 she testified that she was planning to move to Arizona permanently with her three daughters. After the trial, the superior court awarded shared custody if both the parties resided in Alaska. In the event that Poole relocated to Arizona,[2] the superior court awarded month on/month off visitation until Sydney started school in September 2008. At that point Dreka would assume primary physical and sole legal custody, and Poole would have visitation during some school breaks and the summer.

Poole appeals this custody award. Dreka did not participate in this appeal.

## III. DISCUSSION

The superior court must award child custody based on the best interests of the child,[3] taking into consideration nine factors listed in AS 25.24.150(c). This court reviews child custody decisions for abuse of discretion, which occurs "when we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[4] In child custody cases, we will find the superior court abused its discretion if it "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[5] Factual findings are overturned if they are clearly erroneous, meaning that "a review of the entire record firmly convinces us that a mistake has been made."[6]

### A. It Was Error To Fail To Explicitly Address the Statutory Provisions Dealing with Domestic Violence.

Poole made serious allegations of domestic violence. She claimed that Dreka punched her on numerous occasions, sexually assaulted her, choked her, and threatened to hire a hit man to kill her. She also claimed that he shoved her daughter Britney. She did not present any witnesses who testified to seeing any physical violence on the part of Dreka. One of Poole's coworkers testified that Poole had a black eye once while she was dating Dreka. Dreka maintains that he never physically assaulted Poole or Britney and never threatened Poole. He also claimed that Poole punched him on at least one occasion and bit him twice.

There was extensive testimony about several altercations that occurred between the parties. For example, there was an incident in Alaska in July 2005 that was discussed in detail at trial. Dreka and his father claim

---

**2.** After the trial Poole relocated to Arizona.

**3.** AS 25.24.150(a). AS 25.24.150 establishes how the court should determine custody when the parents are divorcing. Unmarried parents may petition for custody under AS 25.20.060, which requires the court to consider the factors enumerated in AS 25.24.150(c) as well as the presumption established in AS 25.24.150(g).

**4.** *Silvan v. Alcina*, 105 P.3d 117, 120 (Alaska 2005) (quotation omitted).

**5.** *Id.* (quotation omitted).

**6.** *Schmitz v. Schmitz*, 88 P.3d 1116, 1121 (Alaska 2004).

that Poole lost her temper and started pushing and shoving Dreka and screaming profanities at him and eventually bit him in the back. Poole claims that Dreka was chasing her. There was another fight in Florida that Dreka's grandmother heard but did not see. She testified that Dreka was bleeding after the fight and she had to tend to bite wounds and scratches. Poole stated that Dreka assaulted her and she bit him in self-defense. Thus, while witnesses did see clashes between Poole and Dreka, a bite mark on Dreka and a black eye on Poole, most of the evidence regarding physical violence was from the parties themselves and was highly contested.

Alaska Statute 25.24.150(c)(7) requires the superior court to consider "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents." The superior court made the following finding with respect to this factor:

> Domestic violence, although both parents are going to disagree strongly with me, from what I can tell, this was mutual. Both parents have a substantial anger problem. Both of them substantially have minimized it and both of them need to think long and hard about what's going on but I was fairly taken aback by the attitude both parents exhibited on the stand in this respect.[7]

The superior court did not elaborate on this finding or make any additional factual findings regarding domestic violence.

The superior court's language clearly indicates a finding that both parties engaged in domestic violence. A finding of domestic violence triggers two other statutory requirements with respect to child custody.

### 1. Alaska Statute 25.24.150(c)(6)

■ The legislature addressed the issue of how the court should consider domestic violence when dealing with child custody when it amended AS 25.24.150 in 2004.[8] The first change dealt with AS 25.24.150(c)(6), which requires the court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." The legislature added language that prohibits a court from considering this factor in certain situations:

> except that the court may not consider this willingness and ability if one parent shows that the other parent has ... engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child[.] [9]

The superior court seemed to base its custody determination almost entirely on subsection .150(c)(6). The court found both parties to be equally fit parents: "[b]alancing all [the] factors together, I can't say at this point that either party's a more fit parent than the other." The court then emphasized Poole's lack of cooperation and communication with Chris Puddicombe, the father of her two oldest daughters:

> [There is] very little question that if I were to authorize the plaintiff to take this child to AZ with primary custody that the defendant is highly unlikely [to] see her, unless he moved to AZ. And even then it would be a fight. The Court is also ... quite concerned that if plaintiff were awarded sole legal custody defendant would be in the dark just like Mr. Puddicombe.[10]

Poole argues that the superior court abused its discretion by relying on this factor in light of testimony regarding Dreka's domestic violence.

■ In general the trial court does not need to discuss each factor in AS

---

7. The superior court issued oral findings of fact and conclusions of law, which were transcribed by Poole at the request of the court.

8. Ch. 111, §§ 4–5, SLA 2004.

9. *Id.* § 4.

10. There is support in the record for this finding. Dreka, Chris Puddicombe, and Puddicombe's girlfriend, Nannette Hearn, testified extensively as to problems gaining access to and information about their children when Poole had custody of them.

25.24.150(c).[11]   Once the trial court makes an evidence-based finding that domestic violence occurred, however, it should explicitly address whether or not the parent is a continuing threat to the health and safety of the other parent of the children prior to relying on the parent's willingness to foster a relationship under AS 25.24.150(c)(6).   Since the court did not address the domestic violence exception to the subsection (c)(6) factor a remand is necessary.   On remand the superior court should make findings as to whether Dreka represents a continuing danger to the health and safety of Poole or Sydney.   If the court finds that Dreka does represent such a danger, then it should revisit the custody issue without relying on AS 25.24.150(c)(6).

### 2.   Alaska Statute 25.24.150(g)-(i)

The legislature's recent amendments also added several new sections to the child custody statute, including AS 25.24.150(g)-(i).[12] Alaska Statute 25.24.150(g) creates a rebuttable presumption that a parent with a history of perpetrating domestic violence will not be awarded sole or joint custody of the child. Alaska Statute 25.24.150(h) states that a parent should be considered to have "a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence."   Finally, AS 25.24.150(i) tells the trial court how to deal with situations in which both parents are found to have a history of perpetrating domestic violence.[13]

The question presented here is very similar to the one discussed with respect to subsection .150(c)(6) above:   can the superior court make a finding of domestic violence but not explicitly address whether it was serious enough to be a history of perpetrating domestic violence under the definition set out in subsection .150(h)?   Poole did not make this argument on appeal, however, so it is waived unless the superior court's failure to discuss the provisions was plain error.

█   We hold that when the record shows that domestic violence has occurred and the court so finds, it is plain error for the court not to make findings as to whether the domestic violence amounted to a history of perpetrating domestic violence.   If such a history is found then the path charted in subsection .150(g)-(i) must be followed. Thus, we remand this case for findings regarding whether either party's domestic violence satisfied the definition of a history of perpetrating domestic violence set forth in AS 25.24.150(h).

### B.   The Superior Court Did Not Abuse Its Discretion by Awarding Custody to Dreka Even Though Sydney's Sisters Live with Poole.

Poole contends that the superior court failed to consider the relationship between Sydney and her sisters when awarding Dreka primary physical custody as of September 2008.

"This court has often embraced the proposition that it is desirable to not separate

---

11.   In *Park v. Park* this court held that the trial court does not need to explicitly refer to each of the nine factors in AS 25.24.150(c):

> While a court determining custody must always consider each of these statutory factors, it need not refer to all of them in explaining its custody decision.   The court needs only to discuss those factors that it considers actually relevant in light of the evidence presented in the case before it; express mention of each factor is not required, but the court's findings must at a minimum give us a clear indication of the factors which [it] considered important in exercising its discretion or allow us to glean from the record what considerations were involved.

986 P.2d 205, 207 (Alaska 1999) (alteration in original) (quotations omitted).

12.   Ch. 111, § 5, SLA 2004.

13.   AS 25.24.150(i) states the following:

> If the court finds that both parents have a history of perpetrating domestic violence under (g) of this section, the court shall either
> (1) award sole legal and physical custody to the parent who is less likely to continue to perpetrate the violence and require that the custodial parent complete a treatment program; or
> (2) if necessary to protect the welfare of the child, award sole legal or physical custody, or both, to a suitable third person if the person would not allow access to a violent parent except as ordered by the court.

siblings in the course of custody disputes." [14] However, rather than establishing "rigid legal maxims," we have instead opted for "a more flexible approach." [15] This is because, even though "maintaining sibling relationships will typically be in the best interests of the child, cases will undoubtedly arise where the best interests of the child dictate otherwise." [16] Thus, this court has given "trial judges the necessary discretion to best respond to the myriad of factual settings which will invariably arise in custody matters, at all times cognizant that it is the best interests of the child which is the paramount consideration." [17]

The superior court discussed the sibling relationship when it addressed AS 25.24.150(c)(5), which requires the court to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." The court stated the following with respect to this factor:

> The next factor is continuity, the Court doesn't really see that as a factor here. The parents have been sharing custody lately, the kid[ ] bounced around, spending extended periods of time with one or the other parent all her life, in some ways, it cuts both ways, she's got a lot of family and support up here in AK, she's got two sisters down in AZ right now, but if the Court starts factoring that in th[e]n it becomes a self fulfilling prophecy, so the Court doesn't see continuity as a significant issue.

Thus, the court did consider the existence of the siblings in its best interests analysis. While it did not specifically refer to a preference for keeping siblings together, it did note that the sisters had already spent time apart [18] and emphasized the presence of fam- ily in Alaska. There is support in the record for these findings. The parents shared custody prior to trial, and there was testimony indicating that Sydney spent an extended period of time in Florida with Dreka as well. Both sets of grandparents reside in Alaska, although Dreka's parents spend time in Florida every winter.

 Poole's argument that the superior court "refusal to include the sibling relationship in the best interest analysis" is therefore incorrect. The superior court noted the sibling relationship but determined that given the other family relationships in Alaska and the extended periods of time Sydney had been separated from her siblings, the sibling relationship was not dispositive. The superior court did not abuse its discretion in this respect.[19]

## IV. CONCLUSION

The superior court did not abuse its discretion by failing to give decisive weight to the desirability of keeping Sydney with her siblings. However, given the evidence and the court's findings of domestic violence, it was error not to address the domestic violence exception contained in AS 25.24.150(c)(6) and the domestic violence provisions set out in AS 25.24.150(g)-(i). The custody award is therefore vacated, and this case is remanded for findings in compliance with these statutory subsections. The court may order a supplemental hearing if in the judgment of the court a supplemental hearing will be useful or necessary.

**VACATED and REMANDED.**

---

**14.** *Craig v. McBride,* 639 P.2d 303, 306 (Alaska 1982).

**15.** *Id.*

**16.** *Id.*

**17.** *Id.*

**18.** In *Craig v. McBride* this court noted that the fact that siblings were separated for substantial lengths of time could be relevant to the determination of the best interests of the child. 639 P.2d at 306 n. 11.

**19.** Poole also argues that the superior court failed "to give proper weight to the Appellee's admitted intoxication immediately prior [to] picking up the minor child." The superior court discussed the incident in question and found it to be problematic. However, the court found it to be "a one time thing, and didn't put a lot of weight on it." Since there was little evidence beyond this incident that shows that Dreka regularly drove drunk or had a drinking problem, the superior court did not abuse its discretion in making this finding.