Shayla WILLIAMS, f/k/a Shayla
Barbee, Appellant,

v.

Jomell BARBEE, Appellee.

No. S–13604.

Supreme Court of Alaska.

Dec. 8, 2010.

Shayla Williams, pro se, Anchorage, Appellant.

Justin R. Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Jomell Barbee and Shayla Williams both seek primary physical custody of their young son De'Shawn. Barbee and Williams have shared custody of De'Shawn since their separation in February 2008. In April 2009 Williams requested a change in custody because she planned to move to Washington

and because Barbee had pleaded guilty to an assault involving an act of domestic violence toward Williams. After a hearing in June 2009, the superior court concluded that it was in De'Shawn's best interests to continue the shared custody arrangement as long as both parents remained in Anchorage but awarded primary physical custody to Barbee if and when Williams relocated out of state. Williams appeals the superior court's custody award, arguing primarily that the court should not have granted custody to Barbee because Barbee had a "history of domestic violence" that raised a rebuttable statutory presumption against custody and he had not overcome the presumption.

Because the trial court was presented with multiple allegations of abuse and found that at least one incident of domestic violence had been perpetrated by Barbee, it was required to make an express finding as to whether Barbee had a "history of perpetrating domestic violence" under AS 25.24.150(h). Failure to make this finding was plain error. We thus reverse and remand for the superior court to make an express determination whether there is a "history of perpetrating domestic violence." If the superior court finds that Barbee has this history, it must address the statutory presumption against awarding custody to Barbee under AS 25.24.150(g) before awarding any custody to Barbee.[1]

## II. FACTS AND PROCEEDINGS

### A. Barbee And Williams's Relationship And Divorce

Jomell Barbee and Shayla Williams (f/k/a Shayla Barbee) are the parents of De'Shawn Barbee. De'Shawn was born on November 30, 2005. Barbee and Williams married on April 14, 2006 in Anchorage.

Williams alleges that Barbee was abusive during the parties' marriage; she claims that Barbee had "anger issues" and that arguments would "always turn into something bigger than expected and would eventually end with him abusing [her]." According to Williams, Barbee would "choke ... hit ... kick ... [and] throw [her] on the ground" and several times she called the police.

On the night of December 17, 2007, Barbee allegedly "tackled [Williams] from behind and put her in a headlock." Williams stated that Barbee "used both arms and strangled [Williams] to the point she thought that she would lose consciousness" and after Barbee "let go" Williams experienced vomiting, difficulty breathing, and trouble swallowing. Williams later alleged that she had to fight for her life and thought that she was going to die. Williams called the police the next morning; when the police arrived they observed that Williams had "pet[e]chia[2] on her neck and behind both ears" and "what appeared to be blood pooled behind both of her lower eyelids and red marks on her right arm and wrist." Barbee was arrested and charged with assault in the second degree on December 20.

On February 15, 2008, while the criminal charge against him was pending, Barbee filed for divorce. Barbee and Williams, acting pro se, came to an agreement regarding custody and property division at a December 10, 2008 status hearing. On February 11, 2009, the superior court entered a decree of divorce stating that Barbee and Williams had been able to negotiate a settlement regarding property and child custody. Barbee and Williams agreed to have joint legal custody and shared physical custody of De'Shawn; De'Shawn would spend Friday afternoon through Monday morning with Barbee and Monday morning through Friday afternoon with Williams, with alternating holiday arrangements.

On February 27, 2009, Barbee pleaded guilty to the third-degree assault charge that

---

1. Though Williams did not appeal the portion of the superior court's order granting shared physical custody to the parties should Williams remain in Alaska, we note that before granting *any* type of custody to Barbee the superior court must address the presumption of AS 25.24.150(g) if it finds that Barbee has a history of perpetrating domestic violence under AS 25.24.150(h).

2. A "petechia" is "a minute reddish or purplish spot containing blood that appears in skin or mucous membrane as a result of localized hemorrhage." MERRIAM-WEBSTER DICTIONARY, available at http://www.merriam-webster.com/dictionary/petechia.

arose from the December 2007 incident. He was sentenced to 24 months imprisonment with 23 months suspended and three years probation. As part of his probation, Barbee agreed to enroll in and complete a 24–week state-approved Domestic Violence Intervention Program and not to have any contact with Williams.

### B. Williams's Request For Custody Modification

On April 27, 2009, Williams filed a motion to modify the custody arrangement based on two distinct changed circumstances. She first argued that Barbee's guilty plea to a felony assault charge stemming from an act of domestic violence warranted a change in custody. Specifically citing AS 25.24.150(g) and (h), Williams contended that Barbee's plea proved that he had engaged in domestic violence, making him ineligible for a physical custody award unless he overcame the statutory presumption against custody. Williams added that co-parenting was no longer an option because Barbee was prohibited from having contact with Williams and because Williams did not "feel comfortable or safe sharing custody" with Barbee.

Williams also argued for custody modification because she planned to move to Washington with her soon-to-be husband. She stated that it would be in De'Shawn's best interests to move with her. Williams allowed that De'Shawn had always lived in Alaska and had ties to Barbee's family in the state, but argued that because De'Shawn was only three years old, he would easily be able to adapt to a new environment.

Barbee opposed Williams's motion, arguing that pleading guilty to a single act of domestic violence did not constitute a "history of perpetrating domestic violence." Barbee stated that it would be "mentally and emotionally devastating" to De'Shawn to leave Barbee's extended family in Alaska. Barbee then asked for full legal and physical custody of De'Shawn.

### C. The Modification Hearing And The Superior Court's Custody Award

On June 24, 2009, the superior court held a hearing on Williams's motion to modify custody. The court initially found that Williams's reasons for leaving the state were "a legitimate change in circumstances" such that the court would determine what custody arrangement would be in De'Shawn's best interests if and when Williams moved out of state.

The court heard testimony from both parties. Barbee argued that it would be best for De'Shawn to stay in Alaska, because De'Shawn had been born and raised in Anchorage and Barbee's extended family members in Anchorage provided care and support to both Barbee and De'Shawn. Barbee explained how he provides for De'Shawn's financial, physical, and mental needs. He also testified that De'Shawn had been in a "stable" environment and that despite the parties' divorce he had encouraged the relationship between De'Shawn and Williams. When asked about the assault, Barbee admitted that he "choked" Williams, calling it "a terrible mistake." He disputed that he ever "beat" Williams as she alleged. Barbee testified that he was taking domestic violence classes and planned to complete them within the month.

Williams also testified that she provides for De'Shawn's needs. She agreed that De'Shawn was in a "stable" environment in Anchorage, but explained that he was "still pretty young" and "very adaptable to changes." She also detailed how she would make sure that De'Shawn stayed in touch with Barbee if she moved out of state. Williams believed that it would be best for De'Shawn to move with her to Washington because she and her husband could provide a "family structure" including future siblings and financial security, and neither of them had any type of criminal or domestic violence background.

After Barbee and Williams testified, the superior court observed that this was "a close case" and summarized the best interests factors under AS 25.24.150(c). The superior court found that De'Shawn had the typical needs of any child of his age, that both Barbee and Williams were capable of meeting those needs, that the child's preference was not a factor because of De'Shawn's

young age, and that there was love and affection between De'Shawn and both of his parents.[3] These factors weighed evenly between Barbee and Williams.

The superior court then turned to the fifth statutory factor, the desire to maintain continuity,[4] and found that De'Shawn had "been in a stable, satisfactory environment" and that Barbee's extended family in Anchorage was "an important factor." The court determined that it would be in De'Shawn's best interests to "continue the stability" and weighed the fifth factor in favor of Barbee.

Examining the sixth factor, willingness and ability to foster a relationship between the other parent and the child,[5] the court first noted that the factor might not apply to the case in light of the domestic violence between the parties,[6] but ultimately concluded that the factor did not favor either party.

Finally, the superior court touched on the seventh factor, evidence of domestic violence,[7] and found that the factor weighed in favor of Williams because of Barbee's felony assault conviction. The superior court acknowledged that Williams had alleged other instances of abuse and filed other domestic violence petitions that were denied but suggested that none of the additional incidents had been proved. Thus, the court evaluated the seventh factor based on "this one really big deal incident here where you choked her terribly" and found that the seventh factor weighed against Barbee.

Summarizing its best interests analysis, the superior court found "one factor favoring [Williams] fairly strongly [and] one factor favoring [Barbee] somewhat strongly, and the rest of the factors [ ] equally balanced." The court concluded that "the factor of stability and the existence of the extended family on Mr. Barbee's side ... suggest that De'Shawn's best interest would be best served by having Mr. Barbee exercise what would probably be called the custodial period." The court ruled that it would maintain the current custody arrangement if Williams remained in Alaska, but Barbee would be awarded primary physical custody if Williams moved to Washington.

On July 22, 2009, the superior court entered a written order memorializing its decision:

1. Shayla Williams'[s] Motion to Modify Custody is denied.

2. If and when Shayla Williams relocates out of state, Jomell Barbee shall exercise primary physical custody of the parties' child De'Shawn. . . .

3. As long as Ms. Williams continues to reside in Anchorage, the parties shall exercise shared physical custody under the current (previously ordered) schedule.

4. The parents shall continue to exercise shared legal custody. However, if Ms. Williams relocates out of Anchorage, Mr. Barbee may make all decisions regarding De'Shawn's education.

---

3. The superior court later noted that substance abuse was not an issue for either party.

4. AS 25.24.150(c)(5) ("the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

5. AS 25.24.150(c)(6) ("the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

6. We have held that the sixth statutory factor might not be relevant where domestic violence has occurred because a victimized parent should not be expected to foster a relationship with the abusive parent. *Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007) ("Once the trial court makes an evidence-based finding that domestic violence occurred ... it should explicitly address

whether or not the parent is a continuing threat to the health and safety of the other parent [or] the children prior to relying on the parent's willingness to foster a relationship under AS 25.24.150(c)(6)."); *see also* AS 25.24.150(c)(6) (directing courts to consider this factor "except that the court may not consider this willingness and ability if one parent shows that the other parent has ... engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child").

7. AS 25.24.150(c)(7) ("any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents").

Williams asked the superior court to reconsider the custody ruling on July 6, 2009; her motion was denied on July 22. Williams appealed the superior court's decision.

## III. STANDARD OF REVIEW

A superior court has broad discretion in determining child custody matters.[8] We will not reverse a superior court's custody determination unless we are "convinced that the trial court abused its discretion or that its controlling factual findings are clearly erroneous."[9] A superior court abuses its discretion in the custody context when it "fails to consider statutorily mandated factors, weighs factors improperly, or includes improper factors in its decision."[10] A factual finding is clearly erroneous when a review of the entire record leaves us with the "definite and firm conviction" that a mistake has been made.[11] We do not "readily second guess a trial court's custody determination because it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[12]

## IV. DISCUSSION

Alaska Statute 25.20.110 provides that the superior court may modify child custody or visitation "if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child."[13] The parent seeking modification must first establish that there has been a "significant change in circumstances affecting the child's best interests."[14] As a matter of law, both the occurrence of a crime involving domestic violence and one parent's relocation out of state constitute significant changes in circumstances.[15] Once a party demonstrates a qualifying change in circumstances, the court will determine whether modification is in the best interests of the child.[16]

In cases involving a parent's relocation out of state, as long as the relocating parent's reasons for moving are legitimate, the trial court must examine the best interests of the child.[17] Here, the superior court found that Williams's reasons for relocating were "totally legitimate" and proceeded to analyze De'Shawn's best interests.

### A. Domestic Violence And The Presumption Against Custody

Alaska Statute 25.24.150(g), enacted by the legislature in 2004, directs that "[t]here is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."[18] The statute provides that a person has a "history of perpetrating domestic violence . . . if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic vio-

**8.** *Wee v. Eggener,* 225 P.3d 1120, 1124 (Alaska 2010).

**9.** *Michele M. v. Richard R.,* 177 P.3d 830, 834 (Alaska 2008) (quoting *Valentino v. Cote,* 3 P.3d 337, 339 (Alaska 2000)).

**10.** *Id.*

**11.** *Wee,* 225 P.3d at 1124.

**12.** *Michele M.,* 177 P.3d at 834 (internal quotation marks omitted).

**13.** AS 25.20.110(a).

**14.** *Ebertz v. Ebertz,* 113 P.3d 643, 647 (Alaska 2005).

**15.** AS 25.20.110(c) (stating that a "finding that a crime involving domestic violence has occurred since the last custody . . . determination" is a changed circumstance); *Chesser–Witmer v. Chesser,* 117 P.3d 711, 717 (Alaska 2005) (explaining that a change of circumstances "exists as a matter of law when a custodial parent [including a parent with joint custody] moves out of state").

**16.** *Ebertz,* 113 P.3d at 647.

**17.** *Eniero v. Brekke,* 192 P.3d 147, 150 (Alaska 2008); *see also Barrett v. Alguire,* 35 P.3d 1, 7 (Alaska 2001) (stating that "the legal standard in custody cases where one parent chooses to relocate is the same whether the superior court has an initial custody determination or motion to modify custody before it").

**18.** Ch. 111, § 5, SLA 2004.

lence."[19] We define "serious physical injury" under subsection (h) as "physical injury caused by an act performed under circumstances that create a substantial risk of death; or physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy."[20] We have held that once the trial court determines that a party has a "history of perpetrating domestic violence" as defined by subsection .150(h), "the path charted in subsection .150(g)-(i) must be followed," *i.e.*, the rebuttable presumption against custody applies.[21]

At the June 24, 2009 hearing and in its July 22, 2009 order the superior court granted primary physical and shared legal custody to Barbee should Williams relocate out of state. Williams's main argument on appeal is that it was error for the superior court to award custody to Barbee because Barbee has a history of domestic violence and failed to rebut the statutory presumption against custody. Specifically, Williams asserts that "despite recognizing that Mr. Barbee had engaged in serious domestic violence the court failed to make a specific finding or clearly address the presumption that Mr. Barbee could not be awarded physical or legal custody of the child pursuant to AS 25.24.150(g)." Barbee responds that the superior court found that he did not have a history of

domestic violence and so did not have to address the presumption of AS 25.24.150(g).

### 1. The statutory presumption against custody applies in modification proceedings.

■ As a threshold matter, we must determine whether the rebuttable presumption against awarding custody to a parent who has "a history of perpetrating domestic violence" applies in custody modification proceedings.[22] We have held that the "ultimate focus" in the custody modification context "is the best interests of the children."[23] We conclude that applying the statutory presumption against custody is appropriate and necessary in light of this focus.

■ First, the legislative history behind AS 25.24.150(g) strongly indicates that the legislature intended for the presumption to apply in modification proceedings. Alaska Statute 25.24.150(g) was enacted in 2004 by House Bill 385.[24] The primary purpose of H.B. 385 was to protect children from potentially adverse custody determinations in response to growing evidence that domestic violence has severe and long-lasting effects on children.[25] The bill sought to decrease the likelihood that children would be placed in the custodial household where domestic violence exists by ensuring that domestic violence was adequately and specifically included when courts analyzed a child's best interests.[26] This purpose is equally valid at a

**19.** AS 25.24.150(h); *see also* Lisa Bolotin, Note, *When Parents Fight: Alaska's Presumption Against Awarding Custody to Perpetrators of Domestic Violence*, 25 ALASKA L.REV. 263, 275 (2008) (explaining that the Alaska statute "requires that a parent perpetrate a certain level of violence ... before the presumption takes effect").

**20.** *Parks v. Parks*, 214 P.3d 295, 301 (Alaska 2009) (quoting AS 11.81.900(b)(56)).

**21.** *Wee v. Eggener*, 225 P.3d 1120, 1125 (Alaska 2010).

**22.** Neither party raised this point on appeal, but Barbee's counsel raised it at oral argument. Moreover, we must answer this threshold question before considering the superior court's obligations in the modification context.

**23.** *Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998).

**24.** House Bill (H.B.) 385, 23d Leg., 2d Sess. (2004).

**25.** *See* Minutes, House Judiciary Comm. Hearing on H.B. 385, 23d Leg., 2d Sess. (March 1, 2004) (Statement of Chair Lesil McGuire, sponsor) (stating that protection of children is the overarching goal of H.B. 385 and later explaining that similar policies against awarding custody to abusive parents have been widely supported and implemented in other jurisdictions in response to "a growing body of social science literature"); *see also* H.R.REP. No. 101–737, at 3 (1990) (Congress reporting that domestic violence causes children to "experience shock, fear, guilt, long lasting impairment of self-esteem, and impairment of development and socialization skills").

**26.** Minutes, Senate Judiciary Comm. Hearing on H.B. 385, 23d Leg., 2d Sess. (April 27, 2004) (Statement of Representative Lesil McGuire, sponsor) (explaining that batterers are often

modification hearing where, just as in making an initial custody determination, a court should fully address any existence of domestic violence and avoid making a custody determination that will place a child in the custody of an abusive parent.

To accomplish its goal, H.B. 385 refined the best interests analysis by requiring that courts consider the existence of domestic violence not only as part of the traditional "best interests" factors laid out in AS 25.24.150(c) but also as triggering a rebuttable presumption against custody where a history of domestic violence exists.[27] It follows that the presumption is properly a part of the "best interests" analysis in modification proceedings just as it is in initial custody determinations.[28]

Adding support to our conclusion that the presumption applies in modification cases, we observe that AS 25.20.110 does not limit a superior court to consideration of *only* the factors under subsection (c) when determining whether modification is warranted.[29] Nor have we so limited courts making any custody determinations—our guiding concern

has long been the best interests of the child and not strict adherence to the factors enumerated in the statute.[30] In addition, we recently assumed that the statutory presumption applies to a proceeding to modify visitation; there is no reason why it should not similarly apply to a proceeding to modify custody.[31] And employing the presumption where one party seeks modification is a logical extension of our cases applying the other subsections of AS 25.24.150 to modification proceedings.[32] Moreover, given that a finding that a crime involving domestic violence has occurred since the last custody determination is, as a matter of law, a changed circumstance that warrants a modification proceeding, it would make little sense to exclude the presumption against custody in modification cases.[33] The statutory purpose of protecting children would be completely unfulfilled if, in a modification hearing triggered by the occurrence of a crime involving domestic violence, the court could ignore the statutory presumption against awarding custody to the perpetrator of domestic violence.

Finally, we believe that applying the statutory presumption against custody is undoubt-

awarded custody and that H.B. 385 seeks to "level the playing field" by requiring that courts consider domestic violence not only as one factor under .150(c) but as raising a rebuttable presumption against custody); *see also* Bolotin, *supra* note 19, at 287–89 (commenting that the benefit of the rebuttable presumption is that it "ensures that courts give adequate weight to the existence of domestic violence in determining the child's best interests" and "is the best way to ensure that domestic violence is always appropriately considered").

27. *See* Minutes, House Judiciary Comm. Hearing on H.B. 385, 23d Leg., 2d Sess. (March 1, 2004) (Statement of Chair Lesil McGuire, sponsor) ("We will ask the court to continue to ... consider[ ] the factors that are in [AS] 25.24.150(c), ... but we're also saying that you have to consider the rebuttable presumption that's now going to be present in what will be a new subsection (g).").

28. In addition, the amendments and additions to AS 25.24.150 were based on a model statute, which directed that "[i]n *every proceeding* where there is at issue a dispute as to the custody of the child" the presumption against custody should apply. Bolotin, *supra* note 19, at 273 (quoting the MODEL CODE ON DOMESTIC AND FAMILY VIOLENCE § 401 (Nat'l Council of Juvenile and Family Court Judges 1994)) (emphasis added). A modification proceeding is clearly a situation where

child custody is in dispute, and so the rebuttable presumption should apply.

29. AS 25.20.110(a) (in modifying a custody award, the court must determine that "the modification is in the best interests of the child"); *see also* Chapter 111, §§ 1, 2, SLA 2004 (showing that H.B. 385 specifically amended statutory provisions directing courts to look to AS 25.24.150(c) to include the presumption under AS 25.24.150(g)).

30. *See Schmitz v. Schmitz*, 88 P.3d 1116, 1122–23 (Alaska 2004) ("The court may consider other factors not listed in the statute if those additional considerations are relevant to the child's best interests.").

31. *See Morris v. Horn*, 219 P.3d 198, 208–10 (Alaska 2009) (remanding for the trial court to independently find whether multiple incidents of domestic violence had occurred rather than invoking issue preclusion but assuming that the presumption would apply to limit visitation under AS 25.24.150).

32. *See West v. Lawson*, 951 P.2d 1200, 1203 (Alaska 1998) (applying subsection .150(d) in the modification context).

33. AS 25.20.110(c).

edly appropriate in a case such as this one, where the presumption was not addressed at the initial custody determination because the custody award was made pursuant to an agreement of the parties.[34] Applying the presumption is especially necessary where the settlement agreement awarding custody was made by parties with a history of domestic violence during the marriage.[35]

## 2. The superior court must make express findings regarding whether Barbee has a "history of perpetrating domestic violence."

■ Williams maintains on appeal that Barbee "has a history of domestic violence as evidenced by his conviction and his own testimony" and that the trial court "recognized that Mr. Barbee has a history of domestic violence." Citing to the same page of the transcript as Williams, Barbee responds that the superior court found that he *did not* have a history of domestic violence, and so did not have to address the statutory presumption against custody. The transcript suggests that neither party is entirely correct—the superior court did not make any express finding regarding a "history of perpetrating domestic violence" under AS 25.24.150(h). While the trial court's dialogue did include the phrase "history of domestic violence," read in context, it appears that the term "history of

domestic violence" referred to the best interests of the child criteria found at AS 25.24.150(c)(7) rather than a separate analysis under subsection .150(h).[36]

We have held that "when the record shows that domestic violence has occurred and the trial court so finds, it is plain error for the court not to make findings as to whether the domestic violence amounted to a history of perpetrating domestic violence."[37] In *Puddicombe v. Dreka*, we concluded that it was error for the superior court to fail to evaluate whether there was a history under AS 25.24.150(h) after the court found when discussing the seventh best interests factor that both parties had engaged in domestic violence.[38] The evidence of domestic violence in *Puddicombe* consisted of plaintiff's allegations (presented without witness testimony) that defendant punched, sexually assaulted, choked, and threatened to kill her along with extensive testimony about several altercations that occurred between the parties, though "most of the evidence regarding physical violence was from the parties themselves and was highly contested."[39] Even so, because the superior court found that domestic violence had occurred, it was required to "explicitly address whether it was serious enough to be a history of perpetrat-

---

**34.** *See Hamilton v. Hamilton*, 42 P.3d 1107, 1115 (Alaska 2002) (clarifying that while a court modifying a custody award should consider findings made at the original hearing, the court does not have to give such deference where "no findings of fact [were] made at the time of the original order as it was entered into pursuant to a settlement agreement").

**35.** *See Crane v. Crane*, 986 P.2d 881, 889 n. 27 (Alaska 1999) (noting that in certain circumstances a court may examine a custody agreement more closely, such as when there has been domestic violence between the parties); *see also* AS 25.24.220(h)(2) (providing that a court will use a heightened level of scrutiny in reviewing dissolution agreements if there is evidence of domestic violence during the marriage).

**36.** In full, the trial court's statement was:

The next factor is evidence of domestic violence, child abuse or child neglect, and a history of domestic violence between the parents, and this factor weighs in favor of Ms. Williams and against Mr. Barbee, principally because of

this conviction. Now, I know that you've argued that there have been other instances.

. . . .

I also know that there have been other domestic violence petitions filed and denied . . . I don't blame people for filing things if they feel that they really have been the victim of domestic violence, but on the other hand it's not been proven. So what we've got is we've got this one really big deal incident here where you choked her terribly, and that factor weighs against you.

**37.** *Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007); *see also* Bolotin, *supra* note 19, at 276–77 (noting that fact finders in Alaska must follow the procedures outlined in subsections .150(g)-(i) "whenever one party presents credible evidence of domestic violence" such that "once the issue of domestic violence is properly raised, the court must address the question" whether there is a history pursuant to the statute's definition).

**38.** 167 P.3d at 75–77.

**39.** *Id.* at 75–76.

ing domestic violence under the definition set out in subsection .150(h)." [40]

 Addressing this same issue, we recently concluded that a trial court must determine whether domestic violence amounted to a history under AS 25.24.150(h) even when evidence of domestic violence is less "overwhelming" than in *Puddicombe*.[41] In *Michele M. v. Richard R.* the superior court did not find any relevant, recent domestic violence incidents and "may have *implicitly* determined that [defendant's] past acts of domestic violence were neither numerous nor significant and so did not amount to a 'history of perpetrating domestic violence.'"[42] Still, we remanded, stating that "it was plain error for the court not to further determine whether [defendant's] previous acts of domestic violence constituted" a history under the statute.[43] We hold today that where a superior court finds that domestic violence occurred, it must make express findings regarding whether the incident or incidents of domestic violence constitute a "history of perpetrating domestic violence" under AS 25.24.150(h).

At the June 24, 2009 hearing, the superior court made some comments about both the single substantiated incident and Williams's other alleged incidents but did not expressly state whether they amounted to a statutorily defined history of abuse. First, the court referred to the incident that resulted in Barbee's assault conviction and recognized that it was "one really big deal incident here where you choked her terribly." Crucially, however, the superior court did not explain whether "chok[ing] her terribly" amounted to causing a "serious physical injury" such that the single incident constituted a history under subsection .150(h).

"Serious physical injury" in the context of the presumption against awarding custody means "physical injury caused by an act performed under circumstances that create a substantial risk of death; or physical injury that causes serious and protracted disfigure-

ment, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy."[44] The absence of a finding in this case is especially problematic because Williams claimed that she feared for her life during the incident, and the charging document, which was "based upon a review of [the] police report" indicates:

> [Williams] reported that her husband tackled her from behind and put her in a headlock. She said that he used both arms and strangled her to the point she thought she would lose consciousness. She stated that after he let go, she began vomiting and had difficulty breathing. She stated that her voice was hoarse and continued to have trouble swallowing on the morning of the 18th when she called the police. The officer observed that she had pet[e]chia on her neck and behind both ears. The officer noted what appeared to be blood pooled behind both of her lower eyelids and red marks on her right arm and wrist.

On remand the superior court must make an explicit finding whether this choking incident, standing alone, amounts to a history of domestic violence under AS 25.24.150(h).

We next turn to Williams's many additional allegations of domestic violence in her pleadings to the superior court. Even if the superior court determines on remand that the single choking incident did not amount to a history of domestic violence, if Williams's evidence warrants a finding that there were additional incidents of domestic violence, then there was a "history of perpetrating domestic violence," and the superior court must address the rebuttable presumption against custody.

**3. If pro se parties make allegations of domestic violence the superior court must inquire into the allegations and allow the parties to present evidence regarding the allegations.**

 In *Parks v. Parks*, we concluded that AS 25.24.150(g) "requires trial courts to

---

**40.** *Id.* at 77.

**41.** *Michele M. v. Richard R.*, 177 P.3d 830, 837–38 (Alaska 2008).

**42.** *Id.* at 837 (emphasis added).

**43.** *Id.* at 837–38.

**44.** *Parks v. Parks*, 214 P.3d 295, 301 (Alaska 2009) (quoting AS 11.81.900(b)(56)).

consider *alleged incidents* of domestic violence" and that it is appropriate to "question the pro se litigants about facts relevant to the issue" to determine whether an alleged event was an incident of domestic violence.[45] We reaffirm this position here and conclude that it was error not to give Williams an opportunity to put forth evidence to support her allegations.

In *Parks*, a husband admitted during a custody hearing that he had thrown water in his wife's face; the trial court found that this was not an incident of domestic violence for purposes of triggering the statutory presumption against custody because there was no evidence that the wife was afraid.[46] We clarified on appeal that the water-throwing would constitute domestic violence if the husband was attempting to place his wife in fear of imminent physical injury.[47] We then remanded to the superior court for additional findings, explaining:

> Alaska Statute 25.24.150(g) requires trial courts to consider alleged incidents of domestic violence, and here the trial court was in a position to question the pro se litigants about facts relevant to the issue. On remand, the trial court should solicit from the parties the information it needs to determine whether the water-throwing incident was an act of domestic violence.[48]

In this case, Williams's pleadings to the superior court contained numerous allegations of domestic abuse. Williams detailed in her motion to modify custody that during their marriage Barbee had "anger issues" and that arguments would end with Barbee "abusing" Williams, including choking, hit-

ting, kicking, and throwing Williams to the ground. Yet, the superior court did not take testimony from Williams about the individual incidents alleged in her motion to modify custody.[49] Nor did the trial court ask Williams to provide additional information that would have allowed the court to determine whether the alleged events were acts of domestic violence.[50] The superior court should have inquired into the details of the events and provided an opportunity for Williams to present evidence in support of her allegations of abuse in order to determine whether the events were acts of domestic violence. We remand for the superior court to allow and evaluate such evidence.

## B. The Best Interests Factors Under AS 25.24.150(c)

In making a custody decision based on the best interests of the child, a superior court must consider each statutory factor in subsection .150(c) and must discuss the factors that it deems relevant to the case before it.[51] Though a trial court cannot "assign[ ] disproportionate weight to particular factors while ignoring others," it has "considerable discretion in determining the importance of each statutory factor in the context of a specific case" and is not required to weigh the factors equally.[52]

Here, the superior court specifically discussed each factor under AS 25.24.150(c). The court determined that most of the factors did not favor either party, but that two factors affected its analysis—the interest in maintaining stability and continuity weighed in favor of Barbee under AS 25.24.150(c)(5),[53]

45. 214 P.3d at 302 (emphasis added).

46. *Id.* at 300.

47. *Id.*

48. *Id.* at 302; *see also id.* at 300–01 (remanding for the trial court to also determine whether the husband's alleged violations of a long-term protective order were incidents of domestic violence that would constitute a "history" under AS 25.24.150(h) where the trial court made no findings on the subject).

49. While the superior court did not expressly bar Williams from testifying about her allegations, it

is unclear when during the hearing Williams would have had an opportunity to do so.

50. Although the trial court did refer to its earlier rulings denying domestic violence petitions filed by Williams, it is not at all clear that each of the incidents of abuse detailed in Williams's motion to modify custody was the subject of a domestic violence petition.

51. *Park v. Park*, 986 P.2d 205, 207 (Alaska 1999).

52. *Barlow v. Thompson*, 221 P.3d 998, 1005 (Alaska 2009) (citations omitted).

53. AS 25.24.150(c)(5) ("the length of time the child has lived in a stable, satisfactory environ-

while the incident of domestic violence weighed in favor of awarding custody to Williams under AS 25.24.150(c)(7).[54]

Williams argues that the superior court improperly weighed the stability and continuity factor equally against the existence of domestic violence. Barbee replies that the superior court properly discussed and weighed the best interests factors, and that it was appropriate for the trial court to focus on the stability and continuity factor in light of Williams's planned move to Washington.

■ Because the superior court will have to reevaluate on remand the relative weights of the continuity and stability factor and the domestic violence factor in light of its findings regarding the alleged domestic violence, we do not reach the issue of whether the superior court properly analyzed the factors. We note, however, that several of our recent decisions addressing custody modification where one parent relocates out of state emphasize that the interest in stability and continuity described in AS 25.24.150(c)(5) cannot categorically favor the non-relocating party purely due to geographic stability.[55] In *Blanton v. Yourkowski*, we explained our reasoning:

> A continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent. Yet our decisions recognize that courts may properly award primary custody to the relocating parent when that parent offers superior emotional stability.

Thus, the continuity and stability factor does not preordain the result in such cases; instead, it commands a comprehensive inquiry into each parent's respective ability to maintain stable and satisfactory relations between themselves and the child.[56]

We have concluded that stability and continuity "can encompass a multitude of factors, including, but not limited to, the relationship with the custodial parent, the home provided by the custodial parent, the children's school, the community of friends and family, the cultural community, ... the children's relationship with the non-custodial parent ... [and] stability of place."[57] It is the trial court's task "to examine all of these factors and determine, in each case, which predominate."[58]

## C. Unsupervised Visitation

■ On appeal, Williams argues that it was inappropriate for the superior court to allow Barbee to have unsupervised visitation. Barbee urges us not to reach this issue because Williams did not brief the argument. While Williams's briefing on appeal is likely sufficient under our more liberal standards for pro se litigant pleadings,[59] we will not decide this issue because Williams did not raise it in the superior court.

## V. CONCLUSION

We REVERSE the award of primary physical and shared legal custody to Barbee

ment and the desirability of maintaining continuity").

54. AS 25.24.150(c)(7) ("any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents").

55. *See, e.g., Blanton v. Yourkowski*, 180 P.3d 948, 954 (Alaska 2008).

56. *Id.* (quoting *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001)).

57. *Moeller–Prokosch v. Prokosch*, 99 P.3d 531, 534 (Alaska 2004) (quoting *Barrett v. Alguire*, 35 P.3d 1, 9 (Alaska 2001)) (remanding for the superior court to "fully consider[] the effect of [child's] separation from the non-custodial parent" and explaining that "[p]erforming the best interests analysis based on [mother's] assumed move requires symmetric consideration of the

consequences to [child] both if she leaves with him and if she leaves without him").

58. *Barrett*, 35 P.3d at 9 (upholding a trial court finding that it was in the children's best interests to stay in Alaska with their mother because maintaining the children's relationships with their school, community of friends and family, cultural community, and mother outweighed maintaining the relationship with their father with whom they had lived for four and a half years).

59. *See Peterson v. Ek*, 93 P.3d 458, 464 n. 9 (Alaska 2004) (concluding that a pro se litigant's briefing was adequate to preserve claims where we "could discern his legal arguments and [defendant] could reply to them"); *see also Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) ("The pleadings of pro se litigants should be held to less stringent standards than those of lawyers.").

and REMAND for the superior court to make an express finding regarding whether Barbee has a "history of perpetrating domestic violence" pursuant to AS 25.24.150(h). If the superior court finds that Barbee does have a history of domestic violence, it must address the rebuttable presumption against custody under AS 25.24.150(g) before awarding any custody to Barbee.

STOWERS, Justice, not participating.