NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KAYLA L., | ) | |
| | ) | Supreme Court No. S-16355 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-09949 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KELVIN D., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1620 – March 8, 2017 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Kayla L., pro se, Anchorage, Appellant. Kelvin D., pro se, Anchorage, Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I. INTRODUCTION

The mother of a two-year-old child appeals the superior court's order awarding joint legal custody to her and the child's father, and awarding final decision-making authority and primary physical custody to the child's father. She argues that the court failed to consider the father's history of domestic violence and a number of other factors that should have weighed in her favor under AS 25.24.150. We affirm the judgment of the superior court.

---

\* Entered under Alaska Appellate Rule 214.

## II.     FACTS AND PROCEEDINGS

### A.     Complaint And Interim Custody Hearing

Aiden[1] was born to Kayla and Kelvin in June 2014. Kayla also has an older son, but that child has been in Kayla's mother's custody since 2012. Kayla's mother was appointed the older son's legal guardian following a court action concerning allegations of drug use and domestic abuse.

Kelvin filed a custody complaint against Kayla in September 2015. Aiden lived with Kelvin at that time. Kelvin sought sole legal and physical custody of Aiden, with Kayla's visitation conditioned on her completion of a series of drug tests.

The superior court held an interim custody hearing in October. Kelvin had counsel, while Kayla was self-represented. Kelvin argued that Kayla had a history of drug use and had tested positive for methamphetamine on a drug test requested by the Office of Children's Services (OCS), so Kayla should therefore have only supervised visitation until she passed another hair follicle test. Kayla argued that she had passed other recent drug tests and said she wanted to split custody with Kelvin.

Kelvin called an OCS social worker, Matthew Newcombe, to testify about OCS's involvement with the family. Newcombe stated that OCS had become involved with the family in response to a report that Kayla was using heroin while Aiden was in her care. Newcombe testified that Kayla had tested positive for methamphetamine one time and that she had not appeared for half of her urinalysis (UA) appointments.

Kayla admitted at a drug assessment in June 2015 that she had a history of using methamphetamine and other drugs, and a history of depression and bipolar disorder. The assessor recommended that she obtain an updated mental health evaluation and participate in drug abuse treatment.

---

[1]     We use pseudonyms to protect the privacy of the family.

Kelvin, meanwhile, had tested negative on an OCS hair follicle test. A similar test for Aiden was positive for THC, which Newcombe determined was likely caused by external exposure to marijuana smoke. Newcombe felt that Kelvin had cooperated with OCS and was compliant with drug testing.

After Newcombe was excused, the court summarized his narrative of Kayla's test results and asked her whether the summary was accurate. Kayla admitted to testing positive for methamphetamine on the follicle test and to missing the UAs. Kayla then stated:

> I have gone every which way through somebody doing a wellness check on my son because I have — we have history of domestic violence, with [Kelvin] drinking, and drinking and driving. So I try to get the officers to do a wellness check; they wouldn't go do that. And when I got those — my son's hair follicle, I asked them to open a case, and let me see my son, just to let me visit my son.

The court asked if she was seeking custody or just visitation rights, which it advised her would likely be supervised given her history of drug use. Kayla responded that she did not want supervised visitation.

Kelvin testified next. He admitted that he had failed a work-related hair follicle test in February 2015 that showed a positive for cocaine; he said that was from a time when he and Kayla had used cocaine together. He said that he had not drunk alcohol since July 2015. Kelvin also said that he had enrolled Aiden in a program to deal with Aiden's lagging development and motor skills, and that Aiden was making progress.

Kelvin denied that he had ever been violent toward Kayla, saying that Kayla would sometimes scream and yell at him but that she also had never been violent. Kelvin presented the court with an October 1 order denying Kayla's petition for a domestic violence protective order against him for lack of evidence and a notice of

dismissal of domestic violence charges that had been brought against him earlier in the year.

After Kelvin's testimony, Kayla said that she was willing to agree to supervised visitation on an interim basis. The court accordingly awarded Kelvin sole legal and primary physical custody of Aiden until the final custody hearing, with Kayla receiving supervised visitation rights.

## B.    Custody Trial

The court held a two-day custody trial in May and June of 2016. By this time Kayla was no longer self-represented, and both parties appeared with counsel.

Kelvin testified that Kayla was often late for her appointed visits with Aiden, and that he was concerned Kayla was still using drugs or would fall back into old habits once the custody proceedings were finished. Kelvin explained that he hoped to move with Aiden to Wenatchee, Washington to pay down his debt and live with his father. On cross examination Kelvin admitted that he smoked cigarettes with Aiden in the home, but never in the same room as Aiden, and that he sometimes drank beer after work — at most three to four bottles at a time, after Aiden was asleep.

Kayla then took the stand and explained that she had taken a number of drug tests since the interim custody hearing and had cleared all of them, including a hair follicle test in February 2016. She said that she had begun complying with earlier treatment recommendations about a week and a half before trial, and had recently obtained a more frequent visitation schedule with her older child in the custody of her mother. She said she feared that Kelvin was drinking with Aiden present, and said that on one recent visit she smelled Fireball (cinnamon flavored and scented) whiskey on Aiden and his clothes.

Kayla's mother corroborated her daughter's testimony about Aiden returning from Kelvin's custody smelling like Fireball whiskey. She agreed that Kayla

needed to continue the treatment that had been recommended in the June 2015 assessment and acknowledged that Kayla had long been diagnosed with bipolar disorder for which she used to take medication. She also testified that Kayla was a great mother.

Kelvin called his father to testify to his parenting skills. Kelvin's father said that he knew of nothing that would prevent Kelvin from caring for Aiden properly, and that he himself would be available to help care for Aiden if Kelvin were somehow unavailable. He further said that he had no reason to believe that Kelvin had any substance abuse problems.

After closing arguments, the court found that Kelvin's decision to move out of state was not made with the intent of obstructing Kayla's visitation with Aiden. The court found that Aiden did not have any "unusual" needs, aside from his developmental issues which Kelvin had taken steps to address. The court further stated that both parents loved Aiden, but found that Kayla had untreated substance abuse problems, untreated bipolar disorder, and an older child in her mother's custody with whom she had only limited visitation rights. The court therefore questioned Kayla's ability to provide stability, transportation, and a home for a two-year-old child like Aiden. Kelvin, the court acknowledged, had "his own issues," but the court found it significant that Kelvin had taken care of Aiden for a year, had taken steps to ensure visitation between the child and his mother, and was "looking out for the best interests of the child."

The court therefore found that it was in Aiden's best interests for Kelvin to have physical custody, and for both parents to have legal custody with final decision-making authority in Kelvin. Kayla was given supervised visitation rights.

Kayla now appeals. Both parents are self-represented.

## III. STANDARD OF REVIEW

"We will not set aside the superior court's child custody determination unless its factual findings are clearly erroneous or it abused its discretion."[2] "A finding is clearly erroneous when a review of the entire record leaves us with a definite and firm conviction that a mistake has been made."[3] "We grant particular deference to the trial court's factual findings when they are based 'primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' "[4] We will find abuse of discretion in a child custody case "if the trial court considered improper factors or improperly weighed certain factors in making its determination."[5]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Failing To Make Findings On Kelvin's Alleged History Of Domestic Violence.

Alaska Statute 25.24.150 provides that a court "shall determine custody in accordance with the best interests of the child," and "shall consider" a number of factors.[6] One of these factors is "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the

---

[2] *Green v. Parks*, 338 P.3d 312, 314 (Alaska 2014) (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[3] *Id.* (quoting *Limeres*, 320 P.3d at 296).

[4] *Id.* (quoting *Limeres*, 320 P.3d at 296).

[5] *Id.* (quoting *Limeres*, 320 P.3d at 296).

[6] AS 25.24.150(c).

parents."[7]  If the court finds that a parent "has a history of perpetrating domestic violence," then there is a "rebuttable presumption" that the violent parent "may not be awarded" any type of custody over the child at issue.[8]  Courts "must make detailed findings on alleged incidents of domestic violence,"[9] and we have held that "when the record shows that domestic violence has occurred and the court so finds, it is plain error for the court not to make findings as to whether the domestic violence amounted to a history of perpetrating domestic violence" under AS 25.24.150(g).[10]

Kayla argues that the trial court violated these directives and erred in giving "custody of our son to a man who has domestic violence charges against him."  We disagree.

Kayla made a single reference to a "history of domestic violence" in the interim custody hearing, at a time when she was representing herself.  In response to that allegation Kelvin presented the court with a court order denying Kayla's request for a domestic violence protective order against him after finding that there was insufficient evidence to support her allegations, as well as a notice of the prosecution's dismissal of a misdemeanor domestic violence charge.  At the custody trial months later, Kayla and Kelvin were each represented by counsel.  Neither counsel so much as mentioned domestic violence in the family.

---

[7]  AS 25.24.150(c)(7).

[8]  AS 25.24.150(g).

[9]  *Sarah D. v. John D.*, 352 P.3d 419, 429 (Alaska 2015) (citing *Faye H. v. James B.*, 348 P.3d 876, 879-80 (Alaska 2015)).

[10]  *Puddicombe v. Dreka*, 167 P.3d 73, 77 (Alaska 2007).

This court has remanded cases after a trial court's failure to address AS 25.24.150(g)'s rebuttable presumption regarding custody and visitation.[11] But each of those cases involved evidence of numerous acts of violence that had been presented to the trial court. In contrast Kayla made a single unsupported allegation at the interim hearing which was immediately rebutted by Kelvin. By the time of the trial, neither party — both of whom were represented — raised the issue.[12] Because the court was not presented with evidence that would have triggered its obligation to consider the domestic violence presumption, the court did not err in not considering it.

**B.    The Superior Court Did Not Abuse Its Discretion In Giving Kelvin Physical Custody Of Aiden.**

Kayla argues that the trial court's decision was "unfair and unreasonable" because the court failed to consider a number of facts: that Kayla has a long record of clean drug tests since March 2015; that she had successfully parented Aiden in the past; that Kelvin is moving with Aiden out of state; and that Kelvin is an abuser, a felon, and a drunk driver. This court will find abuse of discretion in a child custody case "if the trial court considered improper factors or improperly weighed certain factors in making its determination."[13]

---

[11]    *See, e.g.*, *Sarah D.*, 352 P.3d at 434 n.64 (both parents described multiple instances of assault); *Williams v. Barbee*, 243 P.3d 995, 1004-05 (Alaska 2010) (mother's pleadings contained "numerous allegations of domestic abuse"); *Parks v. Parks*, 214 P.3d 295, 300 (Alaska 2009) (remanding for court to consider whether incident of throwing water on mother was an act of domestic violence).

[12]    We will not invade the attorney-client relationship. Counsel are presumed to be competent, and we assume that each counsel made a strategic decision not to raise the issue. *See David S. v. State, Dep't of Health & Soc. Servs.*, 270 P.3d 767, 784 (Alaska 2012) (quoting *State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1988)).

[13]    *Green v. Parks*, 338 P.3d 312, 314 (Alaska 2014) (quoting *Limeres v.*
(continued...)

The superior court did not abuse its discretion. Despite Kayla's assertion to the contrary, the superior court did acknowledge that she "has been sober for a long time period"; it simply found more important the fact that she had not begun to engage in the recommended substance abuse treatment until the week before trial. And while it is true that Kayla had cared for Aiden in the past, the court noted that her experience with her older child — who had been in the custody of Kayla's mother for more than three years — reflected poorly on her capability as a parent of the two-year-old Aiden.

The court acknowledged that Kelvin had "his own issues," apparently referring to his admitted history of drug use. But as the superior court noted, Kelvin had taken care of Aiden for almost a year[14] and had taken steps to ensure that Kayla could visit Aiden.[15] Kelvin also produced evidence that he had sought help for Aiden's developmental issues and testified that he had Aiden caught up with his immunizations.[16] The superior court thus had substantial basis to conclude that Kelvin was looking out for Aiden's best interests.

---

[13]   (...continued)
*Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

[14]   *See* AS 25.24.150(c)(5) (requiring that courts consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

[15]   *See* AS 25.24.150(c)(6) (requiring that courts consider "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

[16]   *See* AS 25.24.150(c)(1), (2) (requiring that courts consider "the physical, emotional, mental, religious, and social needs of the child" and "the capability and desire of each parent to meet these needs").

The court did not make findings as to Kelvin's alleged criminal record because Kayla never brought the matter to its attention. Because Kayla first raises these issues in her appeal, they are waived.[17]

Finally, Kayla argues that the superior court erred in "let[ting her] son leave the state," because it is "unfair and financially unreasonable for [her] to visit [her] son in another state." This court has held that a custodial parent may move out of state so long as the move is made for legitimate reasons and custody with that parent remains in the best interests of the child.[18] The superior court found that Kelvin's decision to move to Washington was not made for any impermissible purpose, then commenced its analysis of the best interests factors as analyzed above. Its best interests analysis, considered in light of Kelvin's move, provides no cause for reversal here.

## V.    CONCLUSION

We AFFIRM the judgment of the superior court.

---

[17]    *See AT&T Alascom v. Orchitt*, 161 P.3d 1232, 1243 (Alaska 2007) (holding that AT&T had waived issue regarding reliability of medical testimony because AT&T only raised the issue for the first time on appeal).

[18]    *See McQuade v. McQuade*, 901 P.2d 421, 424 (Alaska 1995) (citing *House v. House*, 779 P.2d 1204, 1208 (Alaska 1989)).