**Jhyshain WEE, Appellant,**

v.

**Charles EGGENER, Appellee.**

No. S–13465.

Supreme Court of Alaska.

March 12, 2010.

---

Justin Eschbacher and Gary Eschbacher, Law Offices of G.R. Eschbacher, Anchorage, for Appellant.

Robert C. Erwin, Robert C. Erwin, LLC, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

WINFREE, Justice.

## I. INTRODUCTION

Following a five-day custody trial between unmarried parents regarding their young son, the trial court found that the father has a history of domestic violence. It nonethe-

less awarded shared physical custody and temporary joint legal custody, deferring final determination of legal custody for one year. When issuing its oral findings and conclusions, the trial court also granted the father's request for a mutual no contact order.

The mother appealed the trial court's awards of temporary joint legal custody and shared physical custody. She argued that a court may not award any type of custody to a parent who has a history of domestic violence unless the statutory presumption against custody is overcome, and that the court failed to find the father had overcome that presumption. She also appealed the trial court's deferral of final legal custody, its award of unsupervised visitation to the father, and the mutual no contact order.

After oral argument, we issued an order: (1) vacating the trial court's order awarding shared physical custody and temporary joint legal custody to the father; (2) vacating the shared physical custody schedule ordered by the trial court; (3) remanding limited jurisdiction to the trial court to establish a reasonable unsupervised visitation schedule for the father; and (4) vacating the mutual no contact order as it applied to the mother contacting the father. We now explain the basis for our decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

Jhyshain Wee and Charles Eggener's son was born in September 2004. The two have never married, but began cohabiting when Wee became pregnant. Within a few months of their son's birth their relationship became strained and plagued with abuse accusations.

Wee reported that the relationship deteriorated due to verbal and physical abuse Eggener directed towards her. In July 2006 one such incident led to a long-term protective order against Eggener. Wee claimed she sought that protective order after Eggener grabbed her, causing a large bruise on her upper arm. Wee explained Eggener grabbed her when she attempted to leave the house during one of his "rage outburst[s]." Two weeks after obtaining the protective order, Wee modified it to allow Eggener con-

tact with their son. And two months after obtaining the protective order, Wee "rescinded" or asked for a dismissal of the proceedings.

Wee also detailed a January 2007 incident when Eggener's escalating anger frightened her, and out of concern for her safety and that of their son, she attempted to dial 9-1-1. Wee claimed Eggener disconnected the call, pushed her onto the bed, and restrained her movement. Eggener confirmed he took the phone out of Wee's hand and hung it up. But Eggener claimed he had been unaware Wee actually had dialed 9-1-1, because she often picked up the phone and threatened to call for help without dialing any number.

Wee testified that Eggener often physically restrained her, as during the January 2007 incident or when she would threaten to leave the house with their son or call for help after tiring of Eggener's shouting. Wee claimed that while restraining her, Eggener would shout at her for periods of five to fifteen minutes, sometimes when their son was watching. She claimed this sort of incident happened about three or four times a month.

Eggener admitted that he and Wee argued when their son was young, but he blamed the arguments on his desire to increase Wee's involvement in their son's life and in household chores. Eggener testified that during these arguments Wee would threaten to take their son and leave the country, to go to a shelter, or to call the police and claim Eggener physically abused her. Eggener estimated that Wee made threats like these at least twice a week. Eggener also claimed Wee twice threatened to kill their son.

According to Eggener, Wee became depressed around December 2007. Eggener thought that about that time their son began preferring Eggener's company to Wee's, contributing to Wee's depression. During this time Wee told Eggener she thought he might be sexually abusing their son. Although Eggener claimed this allegation was unfounded, Wee went to the Office of Children's Services (OCS) and alleged Eggener was sexually abusing their son. Wee then filed for a protective order against Eggener on behalf of her son based on the abuse allegation. At

the same time, Wee filed for a protective order against Eggener on her own behalf.

In early January 2008 the superior court granted Wee's motion on behalf of the son for a twenty-day ex parte protective order against Eggener. At the subsequent hearing Wee withdrew the son's motion for a long-term protective order but pursued her own domestic violence protective order against Eggener. The court granted Wee's motion for a domestic violence protective order against Eggener based on the order granted in 2006, finding that she was "still in fear." The court also ordered a 4/3, 3/4 custody schedule.

## B. Proceedings

In early 2008, shortly after Wee filed for the domestic violence protective orders, Eggener filed a complaint for sole legal and primary physical custody of their son. Wee countered with her own request for sole legal and primary physical custody. On December 30, 2008, after a five-day trial, the trial court entered its custody orders.

The trial court first found that: the child's relationship with each parent was loving and affectionate; both parents were capable of providing for the child's needs; and the child had spent his whole life with both parents. The court also found there was no evidence that substance use affects the child's well-being.

The trial court stressed that the custody case focused on two issues—Eggener's alleged child sexual abuse and domestic violence. With regard to the former, the court found Wee failed to prove that any sexual abuse had occurred or that the child was in danger in that regard. The court then addressed Wee's claim that Eggener has a history of domestic violence under AS 25.24.150(g) and (h).[1]

The trial court noted Eggener had two domestic violence orders entered against him, one in 1994 and one in 2006.[2] The trial court noted that it had granted the 2008 order "based on the prior granting of the 2006 domestic violence protective order finding that [Wee was] still in fear." The trial court stated it must consider all incidents of domestic violence, but the age and nature of each incident would influence its finding. Considering those factors, the trial court found the 1994 incident "attenuated by age," yet it "ha[d] some weight in determining this case." The trial court noted that the incident, which involved Eggener restraining his teenage daughter, was "consistent with" the 2006 incident involving Eggener restraining Wee. The trial court also found Eggener's actions in January 2007, when he disconnected Wee's 9–1–1 call and restrained her, constituted domestic violence. Because these examples demonstrated Eggener engaged in multiple domestic violence incidents, the trial court found by a preponderance of evidence that Eggener has a history of domestic violence under AS 25.24.150(h).[3] The trial court ordered Eggener to complete a state-ap-

1. AS 25.24.150(g) and (h) state:

   (g) There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child.
   (h) A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence. The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best

   interests of the child require that parent's participation as a custodial parent because the other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.

2. Eggener's ex-wife obtained the 1994 order after an incident during an exchange of their teenage daughter.

3. AS 25.24.150(h) describes two ways in which a parent can be found to have a history of domestic violence: (1) the parent engaged in one incident of domestic violence that led to serious physical injury or (2) the parent has engaged in multiple incidents of domestic violence. *See* note 1, above.

proved domestic violence course and a parenting course.

Applying AS 25.24.150(j)[4] the trial court found by a preponderance of evidence that Eggener did "not abuse alcohol or psychoactive drugs" or "pose a danger of mental or physical harm to [his son]." The trial court then found "that unsupervised visitation [was] in the child's best interests" and ordered Eggener and Wee to continue the existing 4/3, 3/4 custody schedule.

The trial court awarded shared physical custody but deferred determining legal custody for one year, requiring the parents to "submit to binding arbitration" for non-emergency medical and educational decisions regarding their son. The trial court ordered temporary joint legal custody in the interim. During the oral decision, Eggener requested, and the trial court granted, a mutual civil no contact order between Wee and Eggener, except for issues concerning their son.

Wee filed a motion for reconsideration, arguing the trial court erred by ordering a mutual no contact order and "joint legal custody with the requirement of arbitration." In response to that motion, the trial court affirmed the mutual no contact order but deleted the requirement of binding arbitration in its custody order.

Wee appealed the trial court's decisions regarding custody, visitation, and the mutual no contact order. Shortly after oral argument, we issued an order addressing Wee's appeal. We vacated: (1) "[t]hose portions of the trial court's ... order granting shared physical custody and temporary joint legal custody to ... Eggener"; (2) the shared physical custody schedule; and (3) the mutual no contact order as it applied to Wee's ability to contact Eggener. We remanded limited jurisdiction "to the trial court to establish a reasonable unsupervised visitation schedule for ... Eggener," based on Wee having sole legal and primary physical custody of their son. This opinion explains the basis for our order.

## III. STANDARD OF REVIEW

A trial court has broad discretion in deciding child custody issues.[5] We review a trial court's child custody decision for abuse of discretion and review underlying factual findings for clear error.[6] Abuse of discretion in child custody cases occurs when a trial court considers improper factors or improperly weighs factors in its decisional process.[7] We find clear error when, after review of the entire record, "we are left with a definite and firm conviction" a mistake occurred.[8] But we grant "particular deference to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[9] We review questions of law, such as whether the trial court applied the correct legal standard, de novo.[10]

4. AS 25.24.150(j) states:
   (j) If the court finds that a parent has a history of perpetrating domestic violence under (g) of this section, the court shall allow only supervised visitation by that parent with the child, conditioned on that parent's participating in and successfully completing an intervention program for batterers, and a parenting education program, where reasonably available, except that the court may allow unsupervised visitation if it is shown by a preponderance of the evidence that the violent parent has completed a substance abuse treatment program if the court considers it appropriate, is not abusing alcohol or psychoactive drugs, does not pose a danger of mental or physical harm to the child, and unsupervised visitation is in the child's best interests.

5. *Millette v. Millette,* 177 P.3d 258, 261 (Alaska 2008) (citing *Jenkins v. Handel,* 10 P.3d 586, 589 (Alaska 2000)).

6. *Jaymot v. Skillings–Donat,* 216 P.3d 534, 538 (Alaska 2009) (citing *Millette,* 177 P.3d at 261).

7. *Id.* at 538–39 (quoting *Millette,* 177 P.3d at 261).

8. *Dingeman v. Dingeman,* 865 P.2d 94, 96 (Alaska 1993) (quoting *Brosnan v. Brosnan,* 817 P.2d 478, 480 (Alaska 1991)) (emphasis and internal quotation marks omitted).

9. *Millette,* 177 P.3d at 261 (quoting *Ebertz v. Ebertz,* 113 P.3d 643, 646 (Alaska 2005)) (internal quotation marks omitted).

10. *Harvey v. Cook,* 172 P.3d 794, 797 (Alaska 2007) (citing *Ebertz,* 113 P.3d at 646).

## IV. DISCUSSION

### A. It Was Error To Order Temporary Joint Legal Custody and Shared Physical Custody After Finding Eggener Has a History of Domestic Violence Without Addressing the Presumption Against Custody in AS 25.24.150(g).

■ In 2004 the legislature added several subsections to the child custody statute, AS 25.24.150.[11] One of the additions, subsection (g), "creates a rebuttable presumption against awarding sole or joint legal or physical custody to a parent who 'has a history of perpetrating domestic violence against the other parent.'"[12] Under AS 25.24.150(h), another 2004 addition to the child custody statute, "[a] parent has a history of perpetrating domestic violence" if "the parent caused serious physical injury" during a domestic violence incident or "has engaged in more than one incident of domestic violence."[13]

Alaska Statute 25.24.150(g)'s presumption against custody may be overcome if a parent with a history of domestic violence: completes an intervention program for batterers, when reasonably available; "does not engage in substance abuse"; and the child's best interests "require that parent's participation as a custodial parent...."[14] If the presumption is not overcome, AS 25.24.150(g) prohibits awarding the perpetrating parent any type of custody.[15]

Here the trial court found Eggener has a history of domestic violence but failed to address AS 25.24.150(g)'s presumption against custody. We have explained that "the path charted in subsection .150(g)-(i) must be followed" when a court finds one parent has a history of domestic violence.[16] The trial court's custody awards cannot be sustained, and we therefore vacated the trial court's award of temporary joint legal custody and shared physical custody to Eggener, along with the 4/3, 3/4 shared physical custody schedule. We do not reach Wee's challenge to the court's deferral of final legal custody because without a finding that Eggener overcame the presumption against custody, he has no right to any type of custody. Wee has sole legal and primary physical custody of the child, although Eggener may move for a change in custody if he can overcome the statutory presumption against custody.[17]

### B. It Was Not an Abuse of Discretion To Award Eggener Unsupervised Visitation.

■ When a court finds a parent has a history of domestic violence, it generally can grant the perpetrating parent only supervised visitation.[18] But AS 25.24.150(j) outlines an exception to this general rule—a court may award unsupervised visitation if a preponderance of evidence shows the perpetrating "parent has completed a substance abuse treatment program if the court considers it appropriate, is not abusing alcohol or psychoactive drugs, does not pose a danger of mental or physical harm to the child, and

---

**11.** Ch. 111 § 5, SLA 2004; *Puddicombe v. Dreka,* 167 P.3d 73, 77 (Alaska 2007); *see generally* Lisa Bolotin, Note, *When Parents Fight: Alaska's Presumption Against Awarding Custody to Perpetrators of Domestic Violence,* 25 Alaska L.Rev. 263, 272–87 (2008).

**12.** *Parks v. Parks,* 214 P.3d 295, 299 (Alaska 2009) (quoting AS 25.24.150(g) and citing *Puddicombe,* 167 P.3d at 77); *see* Bolotin, note 11, above at 287–89 (noting AS 25.24.150(g) "ensures that courts consider the existence of domestic violence in making custody decisions").

**13.** AS 25.24.150(h); *see also Parks,* 214 P.3d at 299.

**14.** AS 25.24.150(h); *see Michele M. v. Richard R.,* 177 P.3d 830, 837 (Alaska 2008) (citing *Puddicombe,* 167 P.3d at 77) ("If a history of domestic

violence is found, then the lower court must test, per AS 25.24.150, whether the presumption against awarding custody to the parent with a history of abuse has been overcome."); *see* Bolotin, note 11, above, at 285.

**15.** *See* AS 25.24.150(g).

**16.** *Puddicombe,* 167 P.3d at 77.

**17.** The court's order that Eggener complete a state-approved domestic violence course implies Eggener had not overcome the presumption at the time of the custody trial.

**18.** *See* AS 25.24:150(j).

unsupervised visitation is in the child's best interests."[19]

After finding Eggener has a history of domestic violence, the trial court looked to AS 25.24.150(j) and determined Eggener met the requirements for unsupervised visitation. The trial court found by a preponderance of evidence that "Eggener does not abuse alcohol or psychoactive drugs," nor does he "pose a danger of mental or physical harm to [his son]." The trial court also found by a preponderance of evidence that the child's best interests warranted unsupervised visitation by Eggener.

■ Wee challenges the trial court's finding that Eggener does not pose a risk of harm to the child. She argues "[t]he evidence at trial was overwhelming that Mr. Eggener posed a risk of harm to [their son] given his mental health issues and his inability to control his anger." To support her argument Wee cites testimony describing Eggener's past sexual behavior, "potential for alcohol abuse in the future," narcissistic personality traits, and anger management issues.

Ample testimonial evidence in the record supports the trial court's finding. Dr. Bruce Smith, who performed a psychological evaluation of Eggener, testified that the "results . . . do not reflect a concern that [Eggener] is prone to use physical abuse in his interaction with [his son]." Dr. Smith concluded "there is nothing from [his] data that [he] can rely on to state that [Eggener] should not be in the role of parent to his child." Dr. David Wilcox, a clinical psychologist with expertise in anger management, drug and alcohol issues, and sexual compulsivity and who also serves as Eggener's therapist, reached a similar conclusion: "I have no new information that would make me believe that Mr. Eggener shouldn't be able to have visits with his child, unsupervised visits . . . ." The custody

investigator, Elizabeth Still, also recommended unsupervised visitation, suggesting she did not believe Eggener posed a risk of harm to his son.

Based on this evidence, the finding that Eggener does not pose a risk of harm to his son is not clearly erroneous. And conflicting evidence does not by itself indicate an abuse of discretion.[20] For these reasons, we affirm the trial court's unsupervised visitation award to Eggener; we have already remanded limited jurisdiction to the trial court to determine a reasonable unsupervised visitation schedule for Eggener.

### C. It Was an Abuse of Discretion To Issue the Mutual No Contact Order Because the Order Was Not Supported by an Independent Basis Against Wee and Conflicts with Public Policy.

■ Eggener requested and was granted a mutual no contact order while the court was issuing its oral decision. The trial court noted Wee had contacted Eggener throughout the 2006 domestic violence protective order and without a mutual order Eggener was "set[ ] . . . up for failure." In response to Wee's motion for reconsideration, the trial court affirmed its mutual no contact order "based upon the conduct of [Wee] throughout the relationship."

Wee argues the entry of the mutual no contact order was an abuse of discretion because the trial court did not find Wee "had committed any acts of domestic violence against Mr. Eggener, nor in any way posed a danger to Mr. Eggener." Eggener responds that the mutual no contact order is "within the inherent power of the court" and should be affirmed.[21]

---

**19.** *Id.*

**20.** *Cf. Harding v. Harding,* 377 P.2d 378, 380 (Alaska 1962) (citing *Chirikoff Island Cattle Corp. v. Robinette,* 372 P.2d 791, 794 (Alaska 1962)) ("The fact that the award of custody was based upon extremely conflicting evidence does not of itself show an abuse of discretion.").

**21.** We have held that in appropriate circumstances trial courts may issue no contact orders under their "inherent equitable powers." *See Siggelkow v. State,* 731 P.2d 57, 61 (Alaska 1987). We review decisions to grant a mutual no contact order for abuse of discretion. *See Cooper v. Cooper,* 144 P.3d 451, 454 (Alaska 2006) (citing *State v. Kluti Kaah Native Vill. of Copper Ctr.,* 831 P.2d 1270, 1272 n. 4 (Alaska 1992)).

■ The legislature has expressed a policy against issuing mutual no contact orders in a domestic violence proceeding: "[a] court may not grant protective orders against the petitioner and the respondent in the same action under [the Domestic Violence and Sexual Assault] chapter."[22] We have stated that this policy applies in divorce litigation when only one partner has committed acts of domestic violence,[23] and we now extend this policy to divorce-like litigation between unmarried couples when only one partner has committed acts of domestic violence. In addition to social concerns underlying this policy,[24] unwarranted mutual orders in divorce-like settings may create enforcement problems because police will not know whose conduct prompted the order, who is actually afraid of being seriously hurt, or how to proceed.[25]

In *Cooper v. Cooper* we addressed a challenge to the factual basis for a mutual restraining order.[26] The superior court had issued a mutual restraining order, upon the husband's request, based on safety concerns expressed by both parties and the "high level of animosity and distrust exhibited throughout the litigation."[27] On appeal the wife challenged the order's mutuality, claiming the court lacked a factual basis for imposing a restraining order against her.[28] We quoted *Siggelkow v. State* for the rule that "where an 'independent basis' exists for a restraining order, 'it may issue pursuant to the court's equitable power.'"[29] But we also stated that when a court imposes a mutual restraining order, an independent basis for the order must exist with respect to each party.[30] We further explained that neither "an expression of concern by the parties" nor a "general acknowledgment of animosity and distrust" creates an independent basis for an order.[31] We concluded that the restraining order against the wife lacked a "specific factual basis" to support a belief that the wife would commit future harassment or contact, and held that the superior court had abused its discretion by issuing a mutual restraining order.[32]

Although *Cooper* addressed a mutual restraining order issued during a divorce proceeding, it relates directly to Wee's contention that there was no factual basis for the trial court to issue a no contact order against her. Neither the trial court's findings nor the evidence presented at trial indicates Eggener "is or has been a victim of a crime involving domestic violence."[33] In accordance with *Cooper*, Eggener's "expression of

22. AS 18.66.130(b). AS 18.65.530 expresses a similar policy by discouraging arrest of all parties involved in domestic violence incidents: "If a peace officer receives complaints of domestic violence from more than one person arising from the same incident," the officer should arrest "the principal physical aggressor" and "may not threaten or suggest the possible arrest of all persons involved in the same incident in a manner that would have a tendency to discourage" domestic violence reporting. AS 18.65.530(b), (d). Both AS 18.65.530 and AS 18.66.130 were enacted in 1996 as part of House Bill 314, "An Act relating to domestic violence and to crime victims and witnesses...." Ch. 64, §§ 29, 33, SLA 1996.

23. *Cooper*, 144 P.3d at 459 n. 25 (citing AS 18.66.130(b) and recognizing that "mutual restraining orders have come to be disfavored in domestic violence cases," and stating that "this should carry over to divorce litigation as well when only one partner has committed acts of domestic violence.").

24. For example, one commentator suggests that rather than empowering a domestic violence victim, mutual protective orders restrict, condemn, and isolate the victim. Sandra S. Park, Note, *Working Towards Freedom From Abuse: Recognizing a "Public Policy" Exception to Employment–at–Will for Domestic Violence Victims*, 59 N.Y.U. Ann. Surv. Am. L. 121, 148 (2003).

25. *See* Fred G. Zundel & Patrick D. Costello, *Domestic Violence Trends & Topics*, 52 Advocate (Idaho), Jan. 2009, 23, 23.

26. 144 P.3d at 459.

27. *Id.* at 454, 459.

28. *Id.* at 459.

29. *Cooper*, 144 P.3d at 459 (quoting *Siggelkow*, 731 P.2d at 61).

30. *Id.*

31. *Id.*

32. *Id.*

33. AS 18.66.100(a); *see also* AS 18.66.990(3) (defining domestic violence).

concern" that Wee may contact him is insufficient to establish an independent basis for a protective order.[34] It was therefore an abuse of discretion to issue a mutual no contact order lacking an independent factual basis against Wee.[35]

On the other hand, a specific and independent factual basis supported the portion of the no contact order prohibiting Eggener from contacting Wee—the trial court found Wee had been a victim of Eggener's domestic violence, and the trial court entered the no contact order because Wee's domestic violence protective order against Eggener was scheduled to expire soon.

For these reasons we vacated the mutuality of the no contact order—preserving the no contact order as it applies to Eggener, but eliminating the no contact order as it applies to Wee.

**34.** *See Cooper,* 144 P.3d at 459.

**35.** *See id.* (holding "that because the order lacked an independent basis, it was an abuse of discretion to issue the mutual restraining order"). Although a domestic violence protective

## V. CONCLUSION

As provided in our earlier order, we VACATE the trial court's order granting temporary joint legal custody and shared physical custody to Eggener, we VACATE the 4/3, 3/4 shared physical custody schedule, and we VACATE the portion of the mutual no contact order prohibiting Wee from contacting Eggener. The trial court's award of unsupervised visitation to Eggener is AFFIRMED, but we REMAND for the trial court to establish a reasonable visitation schedule for Eggener based on the statutorily required grant of sole legal and primary physical custody to Wee.

order cannot be entered against Wee, the trial court is free to pursue other avenues to address any tendency by Wee to inappropriately contact Eggener.