NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DENNIS Q., | ) | |
| | ) | Supreme Court No. S-15084 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-11-01797 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MONIKA M., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1499 – May 7, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Dennis Q., Fairbanks, pro se, and Joseph W. Miller, Law Office of Joseph Miller, LLC, Fairbanks, for Appellant. Mila A. Neubert, Neubert Law Office, LLC, Fairbanks, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.    INTRODUCTION

This appeal arises from a contested divorce and action for custody of the parties' two children. The superior court concluded that the parents' actions toward each other in the past triggered AS 25.24.150(g)'s rebuttable presumption that both may not

---

\*    Entered under Appellate Rule 214.

be awarded sole legal or sole physical custody because of their history of perpetrating domestic violence against the other, and the court further determined that neither parent had rebutted the presumption. Pursuant to AS 25.24.150(i)(1), which by its own terms governs judgments for custody when "both parents have a history of perpetrating domestic violence under [AS 25.24.150(g)]," the superior court determined that the mother was "the parent who is less likely to continue to perpetrate the violence" and assigned her sole legal and sole physical custody of the children.

The father raises five arguments on appeal. He argues: (1) that he engaged in permissible self-defense, not domestic violence, and that he should therefore not be subject to the presumption of AS 25.24.150(g); (2) that in any event, even under AS 25.24.150(i), he, not the mother, is less likely to continue the violence; (3) that as a pro se litigant during trial he should not have been assessed $10,000 in attorney's fees for the mother's lawyer; (4) that he should not have been required to pay for the expert witness fee of the court-appointed custody investigator who had retired from state service before trial, even though his request for a continuance pushed trial beyond the investigator's retirement date; and (5) that the custody investigator's report and testimony should not have been considered at trial due to alleged bias.

We affirm all of the superior court's actions challenged in this appeal.

## II.    FACTS AND PROCEEDINGS

Monika M. and Dennis Q. married in 2008 in Fairbanks and have two minor children.[1] Monika, through counsel, filed for divorce in May 2011, requesting primary physical and sole legal custody and attorney's fees. Monika moved for interim child custody orders, requesting the same relief and presenting her theory that she was

---

[1]    We use initials in lieu of the parties' last names to protect the family's privacy.

entitled to such a disposition under AS 25.24.150(g) and (h) because of Dennis's alleged history of perpetrating domestic violence. In June 2011, Dennis, represented by counsel at the time, counterclaimed for shared legal custody, shared physical custody while the parties reside near each other, and primary physical custody otherwise, and denied that attorney's fees should be awarded. His opposition to Monika's motion for interim orders requested the same relief, denied perpetrating domestic violence, and alleged that Monika had perpetrated domestic violence.

Monika and Dennis filed cross-petitions for domestic violence protective orders. Following four days of hearings on the petitions, the superior court found by a preponderance of the evidence that Dennis and Monika had both committed assault in the fourth degree on each other on three separate occasions and that Monika had also committed custodial interference in the first degree against Dennis.[2] The court entered long-term domestic violence protective orders against both Monika and Dennis.

---

[2] AS 18.66.990(3)(A) defines "domestic violence" to include the commission "by a household member against another household member" of "a crime against the person under AS 11.41."

AS 11.41.230 defines assault in the fourth degree as occurring when any of the following three conditions are met: "(1) that person recklessly causes physical injury to another person; (2) with criminal negligence that person causes physical injury to another person by means of a dangerous instrument; or (3) by words or other conduct that person recklessly places another person in fear of imminent physical injury."

AS 11.41.320 defines the crime of "custodial interference in the first degree" to occur when a "person violates AS 11.41.330 [defining custodial interference in the second degree] and causes the child . . . to be (1) removed from the state; or (2) kept outside the state." AS 11.41.330 defines the crime of custodial interference in the second degree as occurring when "a relative of a child under 18 years of age . . . [,] knowing that [he or she] has no legal right to do so, . . . takes, entices, or keeps that child . . . from a lawful custodian with intent to hold the child . . . for a protracted period."

The superior court found that all three instances of mutual assault began with Monika grabbing Dennis unjustifiably and Dennis using disproportionate and unnecessary force in response. With respect to the first instance of mutual assault, the superior court found "credible" Dennis's testimony that Monika "grabbed him in the hallway while he was going to say goodnight to the children and that he . . . h[e]ld her arms and back[ed] her down the hallway into the bedroom to calm her down." With respect to the second and third instances of mutual assault, the superior court credited Monika's testimony that she initiated contact with Dennis by grabbing him when Dennis was disciplining their son and that Dennis used vastly disproportionate force in response. In one instance, Dennis "pushed [Monika] up against the bathroom door with his hands around her neck[,]. . . caus[ing] her pain." In another, Dennis "pushed [Monika] up against the wall, . . . pushed her back to the bedroom, pushed her onto the bed, and held her down with his full body weight while yelling at her, [causing] fear." In both instances, the superior court found "no evidence that [the son] was being hurt" or that Monika's grabbing Dennis was "necessary in defense of the child."

With regard to Dennis's allegation of custodial interference, the superior court found that there was no dispute that Dennis signed a statement giving permission for Monika to take the children with her to Canada. And the superior court noted that the parties did not dispute that Monika had originally "agreed to return on February 28, 2011." But Monika "conceded that she stayed longer than she planned," and the superior court found "credible" Dennis's testimony that Monika "called him on February 13th and said she was moving in with her father and keeping the children." Monika returned to Alaska with the children after Dennis threatened to pursue an action in Canada under international law.

After making these findings and issuing the domestic violence protective orders, the superior court addressed the parents' motions for temporary custody. The

superior court concluded that, given its findings above, both parents had a history of domestic violence under AS 25.24.150(h)[3] that triggered the rebuttable presumption under AS 25.24.150(g)[4] against awarding custody of a child to either parent. Pursuant to the requirements of AS 25.24.150(i),[5] which by its own terms governs situations in which both parents have a history of perpetrating domestic violence under AS 25.24.150(g), the superior court found that Monika "would be the least likely under the facts in this case to perpetrate domestic violence."[6] The superior court awarded, on

---

[3] AS 25.24.150(h) defines "a history of perpetrating domestic violence" as existing where, among other possibilities, "the court finds that the parent has engaged in more than one incident of domestic violence."

[4] AS 25.24.150(g) states: "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."

[5] AS 25.24.150(i) states:

> If the court finds that both parents have a history of perpetrating domestic violence under (g) of this section, the court shall either (1) award sole legal and physical custody to the parent who is less likely to continue to perpetrate the violence and require that the custodial parent complete a treatment program; or (2) if necessary to protect the welfare of the child, award sole legal or physical custody, or both, to a suitable third person if the person would not allow access to a violent parent except as ordered by the court.

[6] The superior court implicitly concluded that awarding custody to a "suitable third person" was not "necessary to protect the welfare of the child." AS 25.24.150(i). The superior court's conclusion is supported by its express finding that "there's no credible evidence that either parent would intentionally hurt their children."

a temporary basis, sole legal and physical[7] custody to Monika provided that she met certain conditions.

Dennis moved for reconsideration of the superior court's finding that Monika was less likely to perpetrate domestic violence, arguing that Monika initiated all the mutual assaults and committed the additional instance of custodial interference. The superior court denied Dennis's motion for reconsideration, explaining that "[a]lthough [Monika] initiated the mutual fights between the parties, her assaults (grabbing [Dennis] by the arm) were manifestly less severe than [Dennis's] reactions, (holding [Monika] against the wall in one incident causing pain and pushing her down the hall, onto the bed and restraining her with his full body weight causing fear of choking in another)." The superior court thought that custodial interference was unlikely to recur because Monika "has demonstrated that she will obey court orders" and has "a basic respect for the legal process despite the fact that she initially acted wrongfully."

In preparation for trial, the superior court appointed a child custody investigator from the Office of the Child Custody Investigator.[8] Peter Braveman was assigned as the court-appointed child custody investigator.

---

[7] The interim order stated that it was providing "primary" physical custody to Monika, despite the statutory requirement under AS 25.24.150(i)(1) that the court award "*sole* legal and physical custody" to the parent less likely to perpetrate domestic violence. (Emphasis added.) But the interim orders go on to provide only "visitation" for Dennis, indicating that the superior court intended to grant "sole" physical custody to Monika. In any event, Monika did not move for reconsideration of the interim award on this basis, and the issue is not before this court on appeal. Furthermore the issue is now moot because the superior court's final custody order correctly granted Monika "sole" legal and physical custody.

[8] Alaska Rule of Civil Procedure 90.6(a) provides that a court may appoint an investigator in custody actions under AS 25.24 and that "[i]f the parties cannot afford a private custody investigator, the court may appoint the court custody investigator to conduct the investigation and provide an expert opinion."

Trial was initially scheduled for the week of April 2, 2012. But very shortly before trial was set to begin, Dennis's attorney moved to withdraw from representation, with Dennis's consent, due to "a breakdown of the attorney/client relationship." The court granted the motion. Dennis requested a continuance and stated his desire to obtain new counsel for trial. The superior court granted Dennis a continuance so that he could attempt to obtain new counsel, moving the trial to the week of July 23, 2012. The superior court explained, "This is a continuance completely for [Dennis's] convenience." Dennis never obtained new counsel and proceeded pro se for the duration of this case until oral argument in this court.

Monika objected on the basis that granting the continuance would create a problem regarding the child custody investigator's ability to testify at trial. She noted that Braveman, the state-employed child custody investigator, was set to retire from state service on May 31, 2012, that Braveman might need to be paid to appear at the new trial date after he retired, and that Monika objected to having to foot that bill caused by Dennis's continuance. The court concluded, "If there's payment that has to be made [to Braveman], then [Dennis] is going to have to bear it. This is a continuance completely for his convenience. Do you understand, [Dennis]?" Dennis replied, "Yes, yes I do your honor."[9] Dennis never paid Braveman's fee, and the superior court ultimately ordered Dennis to reimburse Monika for the $3,000 she paid Braveman to testify.

Just prior to trial, Dennis moved the court "to strike" Braveman's child custody investigation report, alleging bias. The superior court denied the motion on the record, stating that the allegations "do[] not go to the admissibility of the report [but

---

[9]     Nothing in the record indicates that the parties or the superior court explored the possibility of the court system paying for Braveman's testimony at trial after his retirement from employment by the court system, or the possibility of transferring the investigation to another employee of the Office of the Child Custody Investigator.

rather] . . . to the weight that would be given to the report if I found that there were bias."

During seven days of trial, the superior court heard testimony and received reports from several expert witnesses. Lisa Hay, the executive director of an alternatives-to-violence program in Fairbanks, performed assessments of both Dennis and Monika. Dr. Dean Zuelsdorf performed a psychological evaluation of Monika, and Kevin Lankford performed a psychological evaluation of Dennis. The custody investigator appointed by the court, Peter Braveman, also prepared an abbreviated report.

In its findings of fact and conclusions of law, the superior court "reviewed . . . and . . . re-affirm[ed]" the "evidence from the long term [domestic violence] hearings and the findings and credibility determinations based on that evidence."[10] The court further found that in addition to having engaged in a history of domestic violence that triggered the presumption of AS 25.24.150(g), neither Monika nor Dennis had overcome that presumption by trial because "both parents continue to deny they engaged in [domestic violence]."

Applying AS 25.24.150(i)(1), the superior court noted that it was "required to . . . award sole legal and physical custody to the parent who is less likely to continue violence."[11] The court concluded that "[t]he balance between the parties on this issue at

---

[10] Hay's assessment of Monika had determined that Monika had not perpetrated domestic violence on Dennis and instead had taken appropriate action to protect her children, but the court gave this portion of Hay's report "no weight" because Hay did not address the court's contrary findings. The court recognized that Monika's "assaults were far less severe" than Dennis's and that "her actions in [no] way justified his actions," but it reaffirmed its finding that Dennis was engaging in permissible parental discipline and that Monika's assault on Dennis was not justified and thus constituted domestic violence.

[11] The superior court determined that "[t]here is absolutely no need to consider awarding these children to the custody of a third party" pursuant to
(continued...)

temporary orders favored [Monika]" and "[i]t does so even more now." The court noted that Monika had continued to demonstrate her willingness to obey court orders and not engage in further custodial interference; that Monika attended parenting classes and obtained counseling "on how to remain calm and avoid emotional entanglement"; that Braveman interviewed Monika's former intimate partners and that domestic violence was not an issue in those relationships; and that Braveman "concluded the violence by [Monika] was situational" and that the court agreed with Braveman's conclusion. By contrast, the court noted that Dennis "has not taken parenting classes and sees no need to change his behavior. He has been recommended for [anger-management] treatment, but refuses to engage in it." The court also noted that although Monika was "resistant to counseling designed to deal with the responses she had to what the court found was spanking — not [domestic violence] — of her children," Dennis "is resistant to making any changes at all." The superior court granted sole legal and physical custody to Monika and granted Dennis unsupervised visitation.[12]

Following trial, the superior court ordered Dennis to pay Monika $10,000 in attorney's fees. The superior court noted that "[a]ttorney's fees awards in divorce are based on the relative economic situations and earning capacities of the parties." The superior court found that the parties had no savings and "disparate" earning capacities,

---

[11](...continued)
AS 25.24.150(i)(2) because "[t]hey have been safe the last year in both parents' care."

[12]     The superior court also conducted a full best-interest analysis under AS 25.24.150(c) and found that "[e]ven without the [domestic-violence] presumption, the balance of custody factors would favor an award of sole legal custody and primary physical custody to [Monika]" because "no factor favors [Dennis] over [Monika]" while three factors — capability and willingness to meet the child's needs, stability, and willingness to facilitate a close relationship — favor Monika and because the breakdown in communications between the parents made sole legal custody the only viable option.

with Monika having use of "$1,900" in net monthly income and Dennis having use of $3,025 in net monthly income, after required transfers. The superior court noted that Monika "was represented throughout this case," relied on Monika's notice to the court that her attorney's fees exceeded $60,000, and noted that "[t]here was some evidence in this case that [Monika's] attorney's fees were paid for by family members." The superior court also noted that Dennis "was unrepresented from March 2012 through trial and remain[ed] unrepresented [after trial], but the stated reason for his lack of representation was a break down in the attorney-client relationship, not an inability to pay." The superior court relied on Dennis's statement in the hearing that he owed his former attorney $11,000. The superior court awarded Monika "$10,000 . . . to help defray the costs of [her attorney's] fees."

Dennis appeals. He raises five arguments: (1) that he engaged in permissible self-defense, not domestic violence, and he should therefore not be subject to the presumption of AS 25.24.150(g); (2) that in any event, even under AS 25.24.150(i), he, not Monika, is less likely to continue the violence; (3) that as a pro se litigant during trial he should not have been assessed $10,000 in attorney's fees for Monika's lawyer; (4) that he should not have been required to pay for the expert witness fee of the court-appointed custody investigator who had retired from state service before trial, even though his request for a continuance pushed trial beyond the investigator's retirement date; and (5) that the custody investigator's report and testimony should not have been considered at trial due to alleged bias.

## III. STANDARDS OF REVIEW

"A superior court has broad discretion in determining child custody matters."[13] "We will not reverse a superior court's custody determination unless we are 'convinced that the trial court abused its discretion or that its controlling factual findings are clearly erroneous.' "[14] In the custody context, a superior court abuses its discretion "when it 'fails to consider statutorily mandated factors, weighs factors improperly, or includes improper factors in its decision.' "[15] A superior court's factual finding "is clearly erroneous when a review of the entire record leaves us with the 'definite and firm conviction' that a mistake has been made."[16] "We do not 'readily second guess a trial court's custody determination because it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence.' "[17] We review questions of law, such as interpreting the requirements of the custody statute and the proper legal tests to be used in the superior court, de novo, "adopting the rule of law that is most persuasive in light of precedent, reason and policy."[18]

---

[13]    *Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010) (citing *Wee v. Eggener*, 225 P.3d 1120, 1124 (Alaska 2010)).

[14]    *Id.* (quoting *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008)).

[15]    *Id.* (quoting *Michele M.*, 177 P.3d at 834).

[16]    *Id.* (quoting *Wee*, 225 P.3d at 1124).

[17]    *Id.* (quoting *Michele M.*, 177 P.3d at 834).

[18]    *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994) (citing *Lantz v. Lantz*, 845 P.2d 429, 431 n.1 (Alaska 1993)).

"The award of attorney's fees in a divorce action . . . rests within the broad discretion of the trial court and will not be disturbed on appeal unless it is 'arbitrary, capricious, or manifestly unreasonable.' "[19] However, the question "[w]hether the court applied the proper legal analysis to calculate attorney's fees is a question of law we review de novo."[20] The award of the custody investigator's fees in a divorce action is to be reviewed in the same manner as the award of attorney's fees.[21]

"We review a trial court's decision to admit or exclude evidence for abuse of discretion, and will reverse such a decision only if the error affected the substantial rights of a party. Similarly, we generally review a trial court's decision to admit expert testimony for abuse of discretion. But when the admissibility of evidence or expert testimony turns on a question of law, we apply our independent judgment."[22] "We apply 'the abuse of discretion standard to review a trial court's decisions relating to appointment of a child custody investigator and admission of the investigator's report into evidence.' "[23]

---

[19]  *Ferguson v. Ferguson*, 195 P.3d 127, 130 (Alaska 2008) (quoting *Hopper v. Hopper*, 171 P.3d 124, 129 (Alaska 2007)).

[20]  *Weimer v. Cont'l Car & Truck, LLC*, 237 P.3d 610, 613 (Alaska 2010) (citing *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001)).

[21]  *See Koller v. Reft*, 71 P.3d 800, 810 (Alaska 2003).

[22]  *Marron v. Stromstad*, 123 P.3d 992, 998 (Alaska 2005) (citations omitted).

[23]  *Littleton v. Banks*, 192 P.3d 154, 157 (Alaska 2008) (citation omitted).

## IV. DISCUSSION

### A. The Trial Court Did Not Err By Concluding Under AS 25.24.150(g) and (h) That Dennis Had A History Of Domestic Violence Or By Rejecting Dennis's Self-Defense Argument.

Alaska Statute 25.24.150(g) creates "a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent . . . may not be awarded sole . . . or joint . . . [physical or legal] custody." Alaska Statute 25.24.150(h) defines a "history of perpetrating domestic violence" as existing "if the court finds that . . . the parent has engaged in more than one incident of domestic violence." Alaska Statute 18.66.990(3) defines "domestic violence" to include "the following offenses . . . by a household member against another household member: (A) a crime against the person under AS 11.41."

In this case, in the protective-order hearing, the superior court found by a preponderance of the evidence that Dennis and Monika committed assault in the fourth degree on each other on three separate occasions — all "crimes against the person" under AS 11.41 and therefore instances of domestic violence within the meaning of AS 18.66.990(3)(A). The superior court specifically stated that it did not find that Monika's actions "justified" Dennis's reactions in any way: "[Dennis] alone is responsible for the physical violence he used." The court stated: "Although [Monika] grabbed his arms inappropriately, [Dennis] responded with unnecessary and far more serious physical force. . . . [Dennis's] violence and force was designed to control and to exercise power over [Monika] and went well beyond the self-defense claims he raised." Accordingly, Dennis (like Monika) was subject to the presumption of AS 25.24.150(g).

On appeal, Dennis argues that he never engaged in "domestic violence" against Monika but rather engaged in permissible self-defense to Monika's three assaults on him, and that therefore it was legal error to apply AS 25.24.150(g)'s presumption to

him because he had no "history of domestic violence." He complains that the superior court erroneously concluded that Dennis "had a duty to retreat" during each instance of mutual fighting such that he was not justified in using force against Monika. Monika argues that, regardless of the dispute over the duty to retreat, Dennis committed domestic violence because he "chose to react to Monika with violence that far surpassed anything she had done."

We do not need to reach Dennis's argument about whether he had a duty to retreat before using force to defend himself from Monika's use of non-deadly force in his home. Even if he had no duty to retreat before invoking self-defense, his self-defense claim would still be subject to the necessity and proportionality requirements that apply to all other self-defense claims involving non-deadly force. Alaska Statute 11.81.330(a) provides that, for criminal matters, "[a] person is justified in using nondeadly force upon another when and to the extent the person reasonably believes it is necessary for self-defense." Case law in the court of appeals elaborates that "[t]he defendant must subjectively believe that the use of force is necessary and that belief must have been objectively reasonable under the circumstances. . . . Further, even though a particular degree of force may be authorized, the use of such force will not be justified if it was not reasonable to believe that such force was necessary to accomplish the person's objective."[24] Even someone lawfully refusing to retreat cannot meet a light push or grab with a knockout blow.[25]

---

[24] *Bartlett v. State*, Mem. Op. & J. No. 513, 1984 WL 908820, at *2 (Alaska App., Jan. 18, 1984).

[25] *See, e.g.*, *People v. Oster*, 294 N.W.2d 253, 258 (Mich. App. 1980) ("The duty to retreat issue must be clearly separated from the more essential question whether defendant used only 'such means as [were] necessary to repel his assailant.' " (alteration in original) (citation omitted)). "[E]ven if the defendant had no duty to retreat . . . , he
(continued...)

The superior court correctly concluded that Dennis's use of force was disproportionate and unnecessary and that Dennis's claim of justification by self-defense must therefore fail. The superior court stated in its oral custody order: "Although [Monika] grabbed his arms inappropriately, [Dennis] responded with unnecessary and far more serious physical force. . . . [Dennis's] violence and force was designed to control and to exercise power over [Monika] and went well beyond the self-defense claims he raised." This legal conclusion is supported by the superior court's factual findings that are not clearly erroneous. In the order denying Dennis's motion to reconsider the interim custody order, the superior court explained: "Although she initiated the mutual fights between the parties, her assaults (grabbing [Dennis] by the arm) were manifestly less severe than [Dennis's] reactions, (holding [Monika] against the wall in one incident causing pain and pushing her down the hall, onto the bed and restraining her with his full body weight causing fear of choking in another)." Because Dennis went beyond the force necessary to defend himself, his self-defense claim must fail regardless of whether he had a duty to retreat before he could invoke a claim of self-defense.

B. **The Trial Court Did Not Err By Concluding Under AS 25.24.150(i)(1) That Monika Should Have Sole Legal And Physical Custody Because She Was The Parent Least Likely To Perpetrate Domestic Violence.**

Alaska Statute 25.24.150(i) provides that when "both parents have a history of perpetrating domestic violence under (g) of this section, the court shall either (1) award sole legal and physical custody to the parent who is less likely to continue to perpetrate the violence . . . ; or (2) if necessary to protect the welfare of the child, award

---

[25](...continued) acted unreasonably in stabbing [the victim] five times, in light of the fact that [the victim] was unarmed and only slightly larger than the defendant." *Id.* at 259.

sole legal or physical custody, or both, to a suitable third person." In this case, the superior court determined that "[t]here is absolutely no need to consider awarding these children to the custody of a third party" pursuant to AS 25.24.150(i)(2) because "[t]hey have been safe the last year in both parents' care." The superior court awarded Monika sole legal and physical custody because it determined that she was less likely to continue to perpetrate domestic violence.

On appeal, Dennis argues that he, not Monika, is less likely to continue to perpetrate domestic violence and that the superior court's finding to the contrary was clearly erroneous, and he argues that the award of custody was therefore an abuse of discretion. Dennis offers four specific arguments: (1) Monika "instigated" each instance of mutual fighting; (2) Monika also assaulted Dennis's father, indicating that her violence was not situational; (3) Monika's violence was precipitated by the presence of the children; and (4) Monika committed custodial interference but Dennis did not.

Monika supports the superior court's finding that she is less likely to continue the violence, pointing to the same factors that the court identified: that Dennis's assaults on Monika were more severe than her assaults on Dennis; that Monika's custodial interference would not recur because Monika would follow court orders; that Dennis was "resistant to making any changes at all" while Monika had undergone some counseling; and that Monika's violence was "situational to the highly tense and stressful relationship" while Dennis's was not.

We conclude that the superior court did not abuse its discretion by awarding sole legal and physical custody to Monika upon determining that she was the parent least likely to perpetrate domestic violence. As discussed above, the superior court did not clearly err when it found that there was a great disparity in the severity of Monika's and Dennis's assaults. Dennis argues that it is illogical to conclude that the disparity in severity of domestic violence affects the likelihood of the recurrence of domestic

violence. But he offers no support for this proposition, and the severity of the assaults is a reasonable factor for making a difficult prediction about future behavior. Dennis alleges that who "instigated" the violence is more probative, but offers no support for that assertion either. We conclude that the superior court did not err by relying on the disparity in the severity of domestic violence rather than on who started the violence in this case.

Relying on disparities in the severity of domestic violence to predict the likelihood of recurrence is especially appropriate in light of the superior court's findings about the nature of that violence in the relationship between Monika and Dennis. The superior court found that Monika "did not use violence in this relationship as a means of gaining control or power or as a tool of manipulation" but rather that "the violence was more likely than not situational to the relationship and circumstances." By contrast, the superior court found that "[Dennis's] violence is typical of the violence seen where a person is using force to exert power and control over another, to manipulate their future actions and to control future behavior through fear." The difference in the nature of the domestic violence perpetrated by the two parties was supported by evidence regarding their psychological health, personality traits, and predispositions.[26]

---

[26] The superior court described as "credible and persuasive" Dr. Zuelsdorf's report and testimony that Monika is "emotionally stable" and would be " 'a buoy or a rock [for the children] to cling to' in difficult times." The superior court noted that she had "greater empathy skills" than Dennis, and the superior court noted approvingly that Monika attended parenting classes and obtained counseling "on how to remain calm and avoid emotional entanglement." There being no evidence of prior domestic violence in her relationships with others, the superior court concluded that her violence did not stem from her personality traits but rather from "the highly tense and stressful relationship she had with [Dennis]."

By contrast, the superior court credited Lankford's testimony that "[Dennis]
(continued...)

Moreover, the superior court did not clearly err when it found that Monika's custodial interference was unlikely to recur because Monika continued to demonstrate her willingness to obey court orders. Dennis seems to disagree with that finding but offers no argument on that point whatsoever. He has not met his burden of demonstrating that the superior court's factual finding is clearly erroneous.

**C.    The Trial Court Did Not Err By Awarding Monika $10,000 In Attorney's Fees From Dennis.**

Alaska Rule of Civil Procedure 82(a) generally awards attorney's fees to "the prevailing party in a civil case." But the judicially created "divorce exception" to Rule 82 "provides that attorney's fees should be awarded in divorce proceedings on the basis of the 'relative economic situations and earning powers of the parties, rather than on the prevailing party standard of Civil Rule 82.' The exception stems from the fact that there is generally no prevailing party in a divorce, and it is meant to assure that both spouses have the means to litigate on an equal footing."[27]

In this case, the superior court applied the divorce exception and relied on the parties' "relative economic situations and earning capacities" to determine that Dennis must pay Monika $10,000 in attorney's fees. The superior court found that the parties had "disparate" earning capacities and actual incomes, with Monika having significantly less of both than Dennis. On the issues of representation and lawyers' fees, the superior court noted that Monika "was represented throughout this case" while

---

[26](...continued)
will resist changing his behavior because he is self-satisfied and accepts no responsibility for his family's dysfunction." The superior court, too, witnessed Dennis's "lack of empathy and dismissiveness . . . which appear to be ingrained."

[27]    *Rosenblum v. Perales*, 303 P.3d 500, 508 (Alaska 2013) (internal citations omitted); *see also Johnson v. Johnson*, 239 P.3d 393, 399 (Alaska 2010); *Koller v. Reft*, 71 P.3d 800, 808 (Alaska 2003).

Dennis was represented until the eve of trial but went unrepresented at trial after an unspecified "break down in the attorney-client relationship." The superior court relied on Monika's attorney's statement that her billings exceeded $60,000 over the entire case. Weighing the parties' earning capacities, the superior court awarded Monika "$10,000 . . . to help defray the costs of [Monika's] [attorney's] fees."

On appeal, Dennis argues that the superior court's award of attorney's fees is an abuse of discretion working a "severe injustice." He offers two principal arguments: (1) that as a matter of fact there were "disparate" financial circumstances between the parties but that he, not Monika, had fewer financial resources; and (2) that as a matter of law it "is manifestly unjust to award attorney's fees to the party that could — and, in fact, *did* — afford an attorney in the divorce, from the party that could not afford counsel."[28] (Emphasis in original.)

We reject the first argument and hold that the superior court's factual findings regarding disparate economic circumstances are not clearly erroneous. Dennis argues that the superior court, in finding that Dennis had a relatively better economic position, ignored the finding that Dennis had no disposable income left after required payments to Monika. But whether Dennis has disposable income immediately after paying expenses does not speak to his *relative* position compared to Monika. If Monika was even worse off, then an award of attorney's fees could be proper under the divorce exception.

Dennis also argues that the superior court abused its discretion by looking at current economic conditions rather than the parties' earnings potential, and he further asserts that Monika has the potential to earn a comparable living to his own as a

---

[28] We note that nothing in the record indicates that the reason Dennis preceded pro se was that he could not afford counsel.

commercial pilot. But there is no indication that the court overlooked earning potential. Dennis admits in his brief that Monika gave up being a commercial pilot many years ago "to care for the children." Dennis cites no record evidence indicating that Monika has retained similar earning capacity to his own, despite her non-participation in the employment market. The superior court found that Monika had been out of the employment market for seven years and that her earning potential now was only $10-$12 per hour. This factual finding is not clearly erroneous.

Finally, Dennis argues that the superior court abused its discretion by noting that Monika's family may have provided her with some financial support but failing to "further inquir[e] to fully determine the parameters of [Monika's] economic situation." The superior court stated: "There was some evidence in this case that [Monika's] attorney's fees were paid for by family members." But what this "some evidence" was is unspecified by the superior court or by Dennis, and we have not found it in our own search of the record. Accordingly, although evidence of outside financial support for litigation expenses may alter a party's economic condition under the divorce exception's fee-shifting inquiry in some cases, Dennis points to no record evidence that would indicate that the superior court abused its discretion in this case by ignoring alleged outside financial support.

We do not reach Dennis's second argument: that a superior court abuses its discretion by awarding attorney's fees in a divorce action from an unrepresented party to a represented party. Both Dennis and Monika were represented prior to trial. The award of $10,000 in attorney's fees, out of Monika's more than $60,000 in total attorney's fees, could indicate that the $10,000 award was intended to equalize the playing field between the parties in the pre-trial period during which they were both represented. Such a payment is not an abuse of discretion. We do not address whether

a superior court would abuse its discretion by assessing attorney's fees from an unrepresented party for the period during which the party lacked counsel.

**D.** **The Trial Court Did Not Err By Requiring Dennis To Pay For The Court-Appointed Custody Investigator's Expert Fee For The Investigator's Testimony After His Retirement From State Service, When Dennis Requested The Continuance Of Trial Past The Retirement Date.**

Court-appointed and court-employed child custody investigators are provided by the court system without charge to the parties.[29] "Fees and costs for a private custody investigator will be divided equally between the parties unless the court finds good cause to change this allocation."[30] Like an award of attorney's fees, the award of a custody investigator's fee is reviewed for an abuse of discretion.[31]

Because of Dennis's request for a continuance after his attorney withdrew from representation with Dennis's consent, the trial in this case occurred after the court-appointed and court-employed child custody investigator, Braveman, retired from state service. The parties and superior court assumed that the party who called Braveman as a witness would have to pay him for his time, an assumption we do not review here.[32] The superior court notified Dennis that he could receive his continuance if he paid for

---

[29] Alaska R. Civ. P. 90.6(a) ("[T]he court may appoint an expert . . . to investigate custody, access, and visitation issues and provide an independent opinion concerning the child's best interests. If the parties cannot afford a private custody investigator, the court may appoint the court custody investigator to conduct the investigation and provide an expert opinion.").

[30] Alaska R. Civ. P. 90.6(i).

[31] *See Koller v. Reft*, 71 P.3d 800, 810 (Alaska 2003).

[32] We note that neither the parties nor the superior court inquired into whether the court system could instead pay for Braveman's fee at trial or whether the Office of the Child Custody Investigator could transfer the case to another investigator.

the additional expense that would be incurred to obtain Braveman's testimony after his retirement. When the superior court asked if he understood, Dennis replied, "Yes, yes I do your honor." The superior court granted the continuance and ordered that Dennis pay Braveman's fee for his preparation for and testimony at trial after Braveman separated from public service.

Dennis argues that the superior court abused its discretion by making Dennis fully responsible for Braveman's fee.[33]

We conclude that the superior court did not abuse its discretion in this case by ordering Dennis to pay Braveman's fee. Dennis could have obtained Braveman's services as a court-appointed child custody investigator with no cost to himself; after the superior court warned him that he would incur Braveman's costs by seeking a protracted continuance, Dennis acknowledged that he understood the conditional nature of the continuance and sought it anyway after giving consent for his attorney to withdraw from representation. We cannot conclude that the superior court abused its discretion under these circumstances. Ordinarily, an expert's additional fees necessitated by a continuance would be borne by the party requesting the continuance.

E.     **The Trial Court Did Not Err By Denying Dennis's Request To Strike The Custody Investigator's Report For Alleged Bias.**

Alaska Rule of Civil Procedure 90.6(d)(2) provides that "[u]nless otherwise ordered, the custody investigator's report is deemed to be admitted into evidence upon filing." "We apply 'the abuse of discretion standard to review a trial court's decisions

---

[33]     Dennis also argues that the continuance past Braveman's retirement date was not caused by him but rather was already necessitated by a delay in Braveman's report. But the superior court noted, correctly, that the parties had already "agreed to go to trial knowing [Braveman's] report was later than usual." The superior court correctly concluded that the continuance was "completely for [Dennis's] convenience" and was not caused by any other factor.

relating to appointment of a child custody investigator and admission of the investigator's report into evidence.' "[34]

In this case, Dennis moved "to strike" Braveman's child custody investigation, alleging bias. The superior court denied the motion, stating that allegations of bias "do not go to the admissibility of the report" but rather factor into "the weight that would be given to the report if I found that there were bias."

On appeal, Dennis argues that the superior court erred by denying his motion to strike Braveman as a witness and by giving some weight to his report when formulating the findings of fact and conclusions of law. He asserts that "the court's custody investigator converted from a neutral fact-finder for the court, employed and paid by the court, to a private investigator who overtly advocated for one party's interests over another." He makes many specific assertions in support of that general conclusion.

We reject Dennis's arguments and conclude that the superior court did not abuse its discretion by denying Dennis's motion to strike Braveman's report and testimony or by subsequently relying on the report and testimony in formulating its findings of fact and conclusions of law. Dennis has "failed to present any plausible evidence of bias"[35] by the child custody investigator beyond the mere allegation of bias. Dennis argues that Braveman "overtly advocated" for Monika. But Braveman testified: "I do come up with conclusions based on the evidence I've gathered and I do put that together to give best interest recommendations and oftentimes they favor one parent over the other, but that's not advocating for the parent; that's my assessment of the evidence that I've gathered." We see no instance in the record of overt advocacy by Braveman

---

[34] *Littleton v. Banks*, 192 P.3d 154, 157 (Alaska 2008) (citation omitted).

[35] *Ogden v. Ogden*, 39 P.3d 513, 517 (Alaska 2001).

on behalf of either party.[36] We conclude that the superior court did not abuse its discretion by admitting the Braveman report and testimony into evidence and by relying on it when formulating its findings of fact and conclusions of law.

## V. CONCLUSION

For these reasons, we AFFIRM all of the superior court's actions challenged in this appeal.

---

[36] To the contrary, Braveman appears to have treated the parties even-handedly. Braveman's report stated: "I am not placing much weight on the anger management assessments [by Lisa Hay] and the OCS findings because there is an appearance that they are one-sided and they are not consistent with the court's findings."